In the Interest of S.K.A., M.A., and S.A., Minor Children.

No. 06–07–00003–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 21, 2007.

Decided Oct. 17, 2007.

Rehearing Overruled Nov. 6, 2007.

Lew Dunn, Law Office of Lew Dunn, Longview, TX, for appellant.

W. Ty Wilson, Asst. Dist. Atty., Longview, TX, for appellee.

Michael Lewis, Kevin Settle, Longview, TX, for ad litem.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

Chad [1] appeals from a default judgment terminating his parental rights to his three minor children. At the time of default, Chad was incarcerated in Mississippi. Chad never had an attorney at the trial to terminate his parental rights and even though he had requested the appointment of counsel, counsel was not appointed until after the statement of points deadline for preservation of error in parental rights termination cases had passed. *See* TEX. FAM.CODE ANN. § 263.405 (Vernon Supp. 2006). Chad raises six issues on appeal— three constitutional challenges to the procedure for appealing parental rights termination cases and three on the merits and procedure below.

### I. General and Procedural Background

In September 2005, the State became aware of possible neglect of then-seven-year-old S.K.A., and then-two-year-old twins M.A. and S.A. by their mother (Ash-

---

1. To protect the parents' and children's privacy, we refer to the parents by their first names and the children by their initials. See TEX. FAM CODE ANN. § 109.002(d) (Vernon 2002).

ley) and Ashley's paramour. Although Ashley and Chad were still married,[2] Chad was in Mississippi.[3] After several months of Ashley's unsatisfactory progress, the State petitioned, on February 9, 2006, to remove the three children from Ashley and her paramour, and for termination of Ashley's and Chad's parental rights.[4]

Chad was served with citation February 15, 2006, in Mississippi. Chad was not present at the adversary hearing February 17, 2006, though the judge noted that Chad had "called my court coordinator and indicated that he had just recently learned of the case and was not able to appear, but left a number for counsel to reach him in the future." The record contains no further indication of contact between Chad and the court until December 2006, although the court held numerous hearings regarding Ashley in the interim.

On July 11, 2006, the court ordered a termination trial for December 11, 2006. On September 5, 2006, the assistant district attorney (A.D.A.) prosecuting the termination attempted to notify Chad of the December hearing, but the notice was returned by the Mississippi Department of Corrections with a notation that Chad was at a different prison unit. The A.D.A., on district attorney letterhead, sent a second notice of the December 11 hearing to Chad. On October 8, Chad responded—not to the court, but to the A.D.A. who had sent the notice—seeking a postponement. The State did not bring this letter ("October 8 letter") to the attention of the court until it introduced the October 8 letter at the termination trial as evidence that Chad had received notice. The State did respond to Chad, on October 13, that it would not seek a postponement and intended to request parental rights termination.

The State sent Chad further notice, on November 16, of the pretrial hearing set for November 28 and trial on December 11. In an envelope addressed to the court clerk but with the district attorney's courthouse suite number, and postmarked December 1, 2006, Chad responded with (collectively, "December 1 letter"): (1) a letter to the judge dated November 21 noting indigence and seeking a continuance; (2) an undated letter to the judge seeking postponement, requesting counsel, noting incarceration, and rebutting certain allegations in the State's petition; (3) a sworn and notarized motion for continuance, dated December 1, which also asserted indigence, requested counsel, answered certain of the State's allegations, and raised certain defenses; and (4) a sworn and notarized affidavit of poverty, dated November 21 and notarized December 1.

---

2. Ashley divorced Chad August 16, 2006, during the course of this proceeding.

3. The record indicates Chad was convicted in Mississippi of possession of methamphetamine precursors with the intent to manufacture a controlled substance in October 2004. Chad was sentenced to five years "in the custody of the Mississippi State Department of Corrections," the last two years under "post-release supervision." The record does not indicate Chad's particular status in September 2005.

4. The record contains conflicting information on Chad's status as of February 2006. The State's February 9, 2006, petition indicated Chad "was recently released from prison." The court found, on February 17, 2006, that Chad "is currently an inmate of the Mississippi Department of Corrections—Lamar Earned Release Supervision Unit." At a later hearing, a State caseworker testified that Chad "was released during the pendency of this case," but later stated that, at the time of the petition, Chad was "confined to his home or the county." Chad remained under "post-release supervision," whatever its parameters, until Mississippi's revocation and re-incarceration of him in July 2006.

The December 1 letter was received on the day of trial on December 11, but several hours after judgment. The judge entered a default judgment against Chad during the 9:40–10:45 a.m. hearing, and then proceeded to hear evidence before determining that termination of parental rights was in the children's best interests and that the statutory grounds had been proven by clear and convincing evidence. *See* TEX. FAM.CODE ANN. §§ 161.001(1)(D), (E), (N), 161.001(2) (Vernon Supp.2006).

There is a handwritten notation on the December 1 letter: "Dec 11 1:30 p.m." The judge stated, at the hearing on the motion for new trial, that she received the December 1 letter on the day of the trial, but after entry of judgment. She stated she treated the documents "as a request for continuance and a request for counsel, and thereupon I appointed Mr. Dunn as counsel." However, this appointment did not occur until January 2 or 3, 2007.[5]

In the interim, the clerk filed all of Chad's documents on December 12, the day after trial and the day after the order of termination had been entered. The clerk apparently responded to Chad on December 18, informing him that his letter had arrived after judgment. Chad responded on December 21 in letters to the judge and the clerk that he still had no counsel and reasserted indigence, requested appointment of counsel, asked that his motion be filed anyway and reconsidered, requested a copy of the record, and requested copies of the relevant law, including post-termination rights. This correspondence was not filed until January 3, 2007.

Counsel filed a notice of appeal January 3, the day he was appointed. Counsel filed "points for appeal" and a motion for new trial and to set aside default the next day (January 4). After a hearing, the court found Chad indigent, denied his motion for new trial, and found Chad presented non-frivolous grounds for appeal.

## II. Family Code § 263.405(d)(3) Constitutional Challenge

Chad contends that Section 263.405(d) of the Texas Family Code[6]—which presents the procedure by which the trial court holds the hearing on a motion for new trial, determines indigence, and determines the frivolousness of an appeal—is unconstitutional, facially and as applied, because it reserves the frivolousness determination to the trial court instead of the court of appeals. However, in this case, the court (1) conducted a timely hearing on Chad's motion for new trial, (2) determined, as requested, that Chad was indigent, and (3) determined that Chad's appeal was not frivolous.

■■■■ We are prohibited from issuing an advisory opinion, the distinctive feature of which is that it decides an abstract question of law without binding the parties. *See* TEX. CONST. art. II, § 1; *Valley Baptist Med. Ctr. v. Gonzalez,* 33 S.W.3d 821 (Tex.2000); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993); *Coastal Marine Serv. of Tex. v. City of Port Neches,* 11 S.W.3d 509, 515 (Tex.App.-Beaumont 2000, no pet.). "The ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes. In this regard, the State ripeness doctrine

---

5. The order appointing counsel was signed January 2 and filed January 3, 2007. Counsel was notified of the appointment the afternoon of January 3.

6. *See* TEX. FAM.CODE ANN. § 263.405(d) (subsection (d)).

is similar to the federal ripeness doctrine in that it has both constitutional and prudential dimensions." *Mayhew*, 964 S.W.2d at 928. Because Chad's constitutional challenge to subsection (d) is not ripe, we overrule this point of error.

### III. Statement of Points Constitutional Challenge

#### A. Jurisdiction

An appellate court reviewing a termination of parental rights on the State's petition "may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal...." TEX. FAM.CODE ANN. § 263.405(i) (subsection (i)). To be timely, the statement of points must be filed within fifteen days of the date of the final order. TEX. FAM.CODE ANN. § 263.405(b) (subsection (b)).

Section 263.405, including subsection (i), does not operate, in the absence of a timely filed statement of points, to deprive this Court of jurisdiction over the appeal. *In re H.H.H.*, No. 06–06–00093–CV, 2006 WL 2820063, at *1 (Tex.App.-Texarkana Oct.4, 2006, no pet.) (mem.op.); *see also* TEX. FAM.CODE ANN. § 109.002 (expressly allowing appeal to courts of appeals); TEX. FAM.CODE ANN. § 263.405(a)

(Vernon Supp.2006) (same). Rather, when a parent fails to preserve a complaint in a timely filed statement of points, we are constrained to affirm that part of the judgment. *See H.H.H.*, 2006 WL 2820063, at *1. This is the approach taken by each of the fourteen courts of appeals, who have all either expressly found that subsection (i) does not deprive appeals courts of jurisdiction,[7] or, though not expressly finding subsection (i) nonjurisdictional, have affirmed on the waived or unpreserved merits rather than dismissing for lack of jurisdiction.[8] *But see In re C.R.*, No. 02–06–099–CV, 2006 WL 3114468, at *1 (Tex. App.-Fort Worth Nov. 2, 2006, no pet.) (Livingston, J., concurring) (stating that Legislature's addition of subsection (i) supersedes earlier holdings that subsection (b) is not jurisdictional).

Chad's statement of points was due, under subsection (b), December 26, 2006. It was not filed until January 4, 2007. Under these facts, we would ordinarily, per the authority above, not address Chad's points of error on appeal and affirm the judgment. Chad, however, raises a constitutional challenge to subsections (b) and (i); specifically, he urges that those sections in combination and as applied to him—an indigent parent without counsel, despite a request for statutorily mandated appointed counsel—have deprived him of the mean-

---

7. *See, e.g., In re R.B.*, 225 S.W.3d 798, 802 (Tex.App.-Fort Worth 2007, no pet.); *In re R.C.*, No. 07–06–00444–CV, 2007 WL 1219046, at *1, —— S.W.3d ——, —— (Tex. App.-Amarillo Apr.25, 2007, no pet.); *In re J.W.H.*, 222 S.W.3d 661 (Tex.App.-Waco 2007, no pet.); *Coey v. Tex. Dep't of Family & Protective Servs.*, No. 03–05–00679–CV, 2006 WL 1358490 (Tex.App.-Austin May 19, 2006, no pet.); *In re S.E.*, 203 S.W.3d 14, 15 (Tex.App.-San Antonio 2006, no pet.); *In re A.C.A.*, No. 13–05–610–CV, 2006 WL 1172331 (Tex.App.-Corpus Christi May 4, 2006, no pet.).

8. *See, e.g., In re M.N.*, No. 11–06–00228–CV, 2007 WL 1366793 (Tex.App.-Eastland May

10, 2007, no pet.); *Pool v. Tex. Dep't of Family & Protective Servs.*, 227 S.W.3d 212, 215 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *In re M.D.L.E.*, No. 09–05–514–CV, 2007 WL 685562 (Tex.App.-Beaumont Mar.8, 2007, no pet.); *In re J.H.*, No. 12–06–00002–CV, 2007 WL 172105 (Tex.App.-Tyler Jan.24, 2007, no pet.); *In re A.H.L.*, 214 S.W.3d 45, 53–54 (Tex.App.-El Paso 2006, pet. denied); *In re C.M.*, 208 S.W.3d 89, 92 (Tex. App.-Houston [14th Dist.] 2006, no pet.); *see also In re M.D.*, No. 05–06–00779–CV, 2007 WL 1310966, —— S.W.3d —— (Tex.App.-Dallas May 7, 2007, no pet.) (retaining jurisdiction to modify judgment).

ingful judicial review required under federal due process and Texas due course of law guarantees. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. We are aware of the "cardinal principle" of judicial restraint that we should not address constitutional issues if it is not necessary. *Van Devender v. Woods*, 222 S.W.3d 430, 432–33 (Tex.2007). However, in this case we are prevented from addressing issues that might be dispositive unless we first decide whether the statute forbidding the consideration of tardy points on appeal is unconstitutional as applied in these circumstances.

## B. Preservation of Error

■■■■ An "as applied" constitutional challenge is waived if not raised at the trial court level. *See In re L.M.I.*, 119 S.W.3d 707, 711 (Tex.2003); *R.B.*, 225 S.W.3d at 802; *In re B.S.W.*, 87 S.W.3d 766, 771–72 (Tex.App.-Texarkana 2002, pet. denied), *overruled subsilentio, on other grounds*, *In re A.V.*, 113 S.W.3d 355 (Tex.2003). Chad raised his constitutional challenges at the trial court level in his timely motion for new trial as well as in his untimely statement of points. The trial court heard argument on the issue at the hearing on the motion for new trial. Thus, the issue has been preserved.[9]

9. *Accord Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983); *cf. In re K.A.F.*, 160 S.W.3d 923, 928 (Tex.2005) (constitutional complaints relating to parental rights termination appeal "could not have been asserted in the trial court" but parent is "required to raise them in the court of appeals in order to preserve error"); *In re B.S.*, No. 09–06–293–CV, 2007 WL 1441273, at *5 (Tex.App.-Beaumont May 17, 2007, no pet.) (finding constitutional challenge to subsection (i) waived since not raised in statement of points *or* motion for new trial); *In re S.B.*, 207 S.W.3d 877, 881–82 (Tex.App.-Fort Worth 2006, no pet.) (implying ineffective assistance claim could have been raised in motion for new trial). *But cf. R.C.*,

## C. Due Process and Due Course—As Applied

■■■■ "A law nondiscriminatory on its face may be grossly discriminatory in its operation." *Griffin v. Illinois*, 351 U.S. 12, 17 n. 11, 76 S.Ct. 585, 100 L.Ed. 891 (1956). An " 'as applied challenge' only requires the challenger to demonstrate that the statute operates unconstitutionally when applied to the challenger's particular circumstances." *B.S.W.*, 87 S.W.3d at 769. In an "as applied" challenge the argument is that a statute, even though generally constitutional, operates unconstitutionally concerning a person because of that person's particular circumstances. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex.1995).

### 1. Statutory Construction

■■■■ As a starting point in assessing an "as applied" challenge:

If possible, we construe a statute in a manner that renders it constitutional and gives effect to the Legislature's intent.... In construing the statute and its effect, we consider several factors, including: the statute's purpose; the circumstances of the statute's enactment; the legislative history; common-law or former statutory provisions, including laws on the same or similar sub-

2007 WL 1219046, at *1–2 (finding late motion for new trial and statement of points inadequate to raise ineffective assistance of counsel claim).

We note that the statement of points requirement may not independently serve to preclude an otherwise-preserved constitutional attack on the statute. *See* TEX. CONST. art. I, § 29 (the Bill of Rights "shall remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void"); *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025, 1028–29 (1934) (judiciary has power to declare void a legislative act restricting judicial enforcement of rights, the effect of which is to violate a constitutional right).

jects; a particular construction's consequences; administrative construction of the statute; and the title, preamble and emergency provision.

*Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex.2002) (citations omitted). Of particular relevance here in determining the constitutionality of subsections (b) and (i), as combined and applied to Chad, are the first four factors.

Section 263.405's purpose is to establish accelerated procedures for appeal of parental rights termination cases so as to "decrease the amount of time that abused or neglected children have to spend in foster care." Senate Comm. on Health & Human Servs., Bill Analysis, Tex. H.B. 409, 79th Leg., R.S. (2005).

> The express purpose of section 263.405 is to eliminate frivolous appeals in termination cases, reduce the costs associated with such appeals, and dispose of the appeals "with the least possible delay." The statute is not intended to bar appeals that raise meritorious complaints, nor is it intended to prevent appellate courts from conducting meaningful review of such complaints.

*In re M.R.J.M.*, 193 S.W.3d 670, 675 (Tex. App.-Fort Worth 2006, no pet.) (quoting Tex. Fam.Code Ann. § 263.405(a)).

Essentially, the statute fast-tracks these appeals while requiring appellants to present their issues to the trial court as well, so that the trial court may correct any "mistakes that could have been quickly and easily corrected" and thus eliminate the need for appeal altogether. House Comm. on Juv. Just. & Fam. Issues, Bill Analysis, Tex. H.B. 409, 79th Leg., R.S. (2005). The legislative history of subsection (i) indicates it was enacted in response to "recent appellate decisions [that] effectively repealed the Legislature's attempt to address the post-judgment delay issue." *Id.* The history indicates that the amendment was intended to "conclusively establish that the Legislature expects litigants to comply" with the statement of points requirement in subsection (b). *Id.; see also In re E.A.R.*, 201 S.W.3d 813, 815 (Tex.App.-Waco 2006, no. pet.) (Gray, J., concurring) (listing cases, pre-subsection (i), in which courts held issues not waived for failure to comply with subsection (b)).

■ The construction forwarded by the State—that an appellate court is barred from reviewing any points of error not included in a timely filed statement of points—is consistent with the statute's purpose, circumstances of enactment, and legislative history, as well as with common law and former statutory provisions. We can imagine no construction of subsection (i) that would give effect to its legislative intent while allowing Chad's issues, which had not been raised in a timely filed statement of points, to be addressed in this appeal.[10] We thus turn to Chad's constitutional challenge.

**2. Due Process and Due Course, Generally**

■ The Fourteenth Amendment provides that no State shall "deprive any per-

---

10. Many of our sister courts of appeals, on similar construction of the statute, have questioned the practical effects and constitutional validity of the statement of points requirement in certain circumstances. *See, e.g., In re R.M.*, No. 04–07–00048–CV, 2007 WL 1988149, at *1, —— S.W.3d ——, —— (Tex. App.-San Antonio July 11, 2007, pet. denied); *M.N.*, 230 S.W.3d 248, 2007 WL 1366793, at *1 n. 1; *Pool*, 227 S.W.3d at 215 n. 11; *In re R.M.R.*, 218 S.W.3d 863, 864 (Tex.App.-Corpus Christi 2007, no pet.); *E.A.R.*, 201 S.W.3d at 815 (Gray, J., concurring); *cf. H.H.H.*, 2006 WL 2820063, at *1 n. 1 (noting the constitutional concerns of other courts of appeals).

son of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The Texas Constitution provides that: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. The Texas "due course" and federal "due process" provisions have been interpreted to be "without meaningful distinction." *Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995) (citing *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 252–53 (1887)). Therefore, in matters of procedural due process, Texas courts have traditionally followed contemporary federal due process interpretations of procedural due process issues. *See Than,* 901 S.W.2d at 929. Our role is to determine "whether the procedures meet the essential standard of fairness under the Due Process Clause." *Landon v. Plasencia,* 459 U.S. 21, 34–35, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

### 3. Constitutionally Protected Interest

■■■■ "In asserting a due course of law claim, [the appellant] must establish that his interest is constitutionally protected." *In re J.W.T.,* 872 S.W.2d 189, 194 (Tex.1994). The "interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (due process "liberty" encompasses "the right of the individual to ... bring up children"); *J.W.T.,* 872 S.W.2d at 195. Thus, the interest in fair procedures in adjudicating a parent's interest in maintaining a relationship with his or her children is a strong one. As

stated by the United States Supreme Court:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *see also In re B.L.D.,* 113 S.W.3d 340, 351–52 (Tex.2003).

### 4. Other Relevant Precedent

We also, in conducting a due-process analysis, examine other relevant precedent. *See M.L.B. v. S.L.J.,* 519 U.S. 102, 119, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). In analyzing Chad's challenge, we find relevant precedent in two areas: (1) access to meaningful appeal, and (2) right to effective counsel in parental rights termination proceedings.

#### a. Meaningful Appeal

The Texas Constitution provides that courts of appeals "shall have appellate jurisdiction ... which shall extend to all cases of which the District Courts ... have original ... jurisdiction, under such restrictions and regulations as may be prescribed by law." TEX. CONST. art. V, § 6. The Legislature has expressly provided for appeals of termination cases. *See* TEX.

FAM.CODE ANN. §§ 109.002, 263.405(a); *In re M.S.*, 115 S.W.3d 534, 546 (Tex.2003).

■ "Although the Federal Constitution guarantees no right to appellate review, once a State affords that right ... the State may not 'bolt the doors to equal justice.'" *M.L.B.*, 519 U.S. at 111, 117 S.Ct. 555 (quoting *Griffin*, 351 U.S. at 24, 76 S.Ct. 585) (Frankfurter, J., concurring)).[11] "[B]ecause Texas provides the right of an appeal from a judgment on parental-rights termination, part of the process of ensuring the accuracy of judgments necessarily involves appellate review.... [I]f appellate review is permitted, it must be allowed." *M.S.*, 115 S.W.3d at 546–47; *see also M.R.J.M.*, 193 S.W.3d at 676 n. 26 ("Once [the Legislature] has granted us jurisdiction over the appeals, however, it cannot interfere with our constitutionally assigned powers for reviewing them").

■ It is "fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *M.L.B.*, 519 U.S. at 111, 117 S.Ct. 555 (quoting *Rinaldi v. Yeager*, 384 U.S. 305, 310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966)). Thus, the Legislature may not, "under the guise of a statute relating to procedure, attempt to deprive any person of a right secured to him by the constitution." *Langever*, 76 S.W.2d at 1029 (quoting 12 C.J. §§ 286, 291); *see also* 16 C.J.S. *Constitutional Law* §§ 124, 130 (regulating appeals), 132 (1984) (legislative encroachment on judiciary via procedural rules). Error preservation in the trial court, which is a threshold to appellate

review of parental rights termination cases, necessarily must be viewed through the due process prism. *See M.S.*, 115 S.W.3d at 546–47. A "rule governing preservation of a complaint" must be reviewed under the procedural due-process analysis. *Id.* at 547.

■ Not only must a parent be allowed to appeal the termination of his or her parental rights, but that appeal must be meaningful. The Fourteenth Amendment requires that state procedures do not extend to some an appeal that is only "a meaningless ritual" while others have a "meaningful appeal." *Douglas v. California*, 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

### b. Right to Counsel

A second area of relevant precedent is the right to counsel. An indigent parent's right to counsel in termination proceedings has generally been discussed by the United States Supreme Court in *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 28–33, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In *Lassiter*, the Supreme Court held that the United States Constitution does not require the appointment of counsel in every parental rights termination proceeding, though it may under certain circumstances. *Id.* at 31, 101 S.Ct. 2153. The determination of whether due process requires the appointment of counsel under the Fourteenth Amendment in parental rights termination proceedings is to be made in the trial court, "subject, of course, to appellate review." *Id.* at 32, 101 S.Ct. 2153. Still, the Court noted that "wise public policy, however, may require that higher standards be adopted than those

11. The *Griffin* line of cases concerning indigent access to appellate review is not limited to criminal cases; in cases involving "state controls or intrusions on family relationships," the United States Supreme Court "has examined closely and contextually the importance of the governmental interest advanced in defense of the intrusion." *M.L.B.*, 519 U.S. at 116, 117 S.Ct. 555. Though civil, not criminal, in nature, "parental termination decrees are among the most severe forms of state action." *Id.* at 128, 117 S.Ct. 555.

minimally tolerable under the [federal] constitution." *Id.* at 33, 101 S.Ct. 2153.

■ The Texas Legislature has provided for such a higher standard; in Texas, an indigent parent has a statutory right to counsel at a parental rights termination proceeding. *See* TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon Supp.2006), § 263.405(e) (subsection (e)) (providing for counsel on appeal); *see also A.H.L.,* 214 S.W.3d at 51 ("Texas has adopted a higher standard"). The court is required, at the trial level, to appoint counsel for "an indigent parent ... who responds in opposition to the termination" requested in a suit by a governmental entity. TEX. FAM.CODE ANN. § 107.013(a)(1). "To obtain such assistance, all the statute requires of an indigent parent is to respond in opposition." *In re J.C.,* 108 S.W.3d 914, 916 (Tex.App.-Texarkana 2003, no pet.).[12] At the appellate level, the statute provides: "If a party claims indigency and requests the appointment of an attorney, the court shall require the person to file an affidavit of indigency and shall hear evidence to determine the issue of indigency." TEX. FAM. CODE ANN. § 263.405(e). On finding indigency (or after indigency is deemed per the statute), the court "shall appoint counsel." *Id.; see also In re K.K.,* 180 S.W.3d 681, 684 (Tex.App.-Waco 2005, no pet.) (in-

digent parent right to counsel includes right to appellate counsel); and *In re K.D.,* 235 S.W.3d 452 (Tex.App.-Waco, 2007, order) (finding that indigent parent's right to appointed appellate counsel continues through appeal to Supreme Court).

■ This statutory right gives rise to constitutional considerations: due process in the administration of the right [13] and the right to constitutionally effective counsel. *See M.S.,* 115 S.W.3d at 544 ("the statutory right to counsel in parental-rights termination cases embodies the right to effective assistance of counsel"). Just as it "would seem a useless gesture" to require appointment of trial counsel not required to perform effectively, *see id.,* it would be useless to require appointment of appellate counsel without requiring that counsel to be effective. *See K.K.,* 180 S.W.3d at 684 ("the right to effective counsel extends to the appellate level").

The trial court received what it acknowledged was a request for counsel and supporting affidavit of poverty December 11, 2006.[14] The State has never challenged Chad's evidence (as provided in his affidavit and letter) of indigency or entitlement, generally, to an attorney. The court had a statutory duty, on receipt of Chad's letter, to "hear evidence to determine the issue of

---

12. The statute in effect at the time of Chad's proceeding did not require indigence to be asserted or proven by any particular means. The Legislature amended the statute, on May 21, 2007, for suits filed on or after the immediately effective date, to add subsection (d) requiring a parent claiming indigence to file an affidavit and the court to hold a hearing. *See* Act of May 21, 2007, 80th Leg., R.S., S.B. 813, § 1, available at *http://www.capitol.state. tx.us*/tlodocs/80R/billtext/html/SB00813F.htm.

13. "Having undertaken to grant the right to counsel, the State must administer that right consistent with the Due Process clause." *A.H.L.,* 214 S.W.3d at 51.

14. The State asserts that Chad's request for counsel in the December 1 letter, received after judgment, is equivocal or ambiguous (borrowing language from the *Miranda* line of cases) in that it does not specify a request for *appellate* counsel in particular. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The State does not explain how *Miranda's* criminal law evidence suppression remedy applies to the civil appointment of counsel statute at issue here, and we decline to adopt that approach. Moreover, we note that Chad, in his December 1 letter, requested an attorney—he did not limit his request to trial counsel.

indigency" and, on finding indigence, to appoint counsel. *See* TEX. FAM.CODE ANN. § 263.405(e). Though subsection (e) allows up to thirty-six days after judgment before an attorney is deemed appointed by default, the court is not required to wait thirty-six days before appointment of appellate counsel.[15] The timetable in subsection (e) seems to presume the continuation of earlier appointed trial-level counsel in an appellate capacity until appointment of appellate counsel under subsection (e). *See In re H.R.,* 87 S.W.3d 691, 702–03 (Tex.App.-San Antonio 2002, no pet.). Chad had no trial counsel to protect his rights pending appointment of appellate counsel.

■ A "trial is unfair if the accused is denied counsel at a critical stage of his trial." *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). We are unaware of cases that have analyzed, through a constitutional prism, the effect of a delayed appointment of counsel in a parental rights termination case. *But see In re K.D.,* 202 S.W.3d 860, 866 (Tex.App.-Fort Worth 2006, no pet.) (not reaching constitutional question, in posture of reviewing frivolousness finding, of delay in appointing trial counsel because record did not indicate at what point after retained counsel's withdrawal the need for appointed counsel was asserted before appointment); *In re D.A.R.,* 201 S.W.3d 229 (Tex.App.-Fort Worth 2006, no pet.) (delayed appointment of appellate counsel, but constitutional issue not raised); *K.K.,* 180 S.W.3d at 683 n. 1 (noting that, with addition of subsection (i), "the importance of having effective assistance of counsel in this critical stage of a termination case has only heightened" during the post-trial mo-

tion period). But consistent with the requirement that counsel in parental rights termination cases be constitutionally effective, it would seem a "useless gesture" to require the appointment of constitutionally effective counsel but when properly requested not require such counsel's appointment before the critical time at which a procedural bar is imposed.

### 5. *Eldridge* Balance

■ Having recognized that Chad's constitutionally protected parent-child relationship is at stake, and in light of the precedent concerning a parent's entitlement to fundamentally fair procedure, meaningful appeal, and effective assistance of counsel before his or her parental rights are terminated, we now review subsection (i)'s procedural bar under a due-process analysis. The proper test for analyzing the constitutionality of a procedure in the parental rights termination context is the three-part balancing test established in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See M.S.,* 115 S.W.3d at 547; *cf. J.F.C.,* 96 S.W.3d 256, 273 (Tex.2002). "In conducting an *Eldridge* due process analysis, we weigh three factors—the private interests at stake, the government's interest in the proceeding, and the risk of erroneous deprivation of parental rights—and balance the net result against the presumption that our procedural rule comports with constitutional due process requirements." *M.S.,* 115 S.W.3d at 547 (footnotes omitted).

■ Both the parent's and the children's private interests are affected in a parental rights termination case. *Id.* at 547–48. The fundamental liberty right of a parent to raise his or her child "is unde-

---

15. For example, the statutorily required frivolousness hearing—discussed in the prior section and presumably attended by counsel—is required to be held within thirty days of judg-

ment, a date which precedes the date on which counsel is deemed appointed. *Compare* TEX. FAM.CODE ANN. § 263.405(d) *with* TEX. FAM.CODE ANN. § 263.405(e).

niably 'an interest far more precious than any property right.'" *J.F.C.*, 96 S.W.3d at 273 (quoting *Santosky*, 455 U.S. at 758–59, 102 S.Ct. 1388). The parent's interest in ensuring "the accuracy and justice of the decision to terminate his or her parental rights is, therefore, a commanding one." *Lassiter*, 452 U.S. at 27, 101 S.Ct. 2153. The children share this interest in assuring an accurate and just decision. *M.S.*, 115 S.W.3d at 547. The children's "best interest" is also at stake. *Id.* "Parents and children also have an interest in resolving termination proceedings as expeditiously as reasonably possible." *J.F.C.*, 96 S.W.3d at 274. On the whole, the parent's and children's interest in ensuring the decision to permanently extinguish the family bond is an accurate and just decision weighs heavily in favor of permitting appellate review of that decision, despite the statutory bar, when counsel was unavailable to assist in meeting the procedural prerequisites.

The State's interest in applying subsection (i) includes protecting the best interest of the child, an interest which is "served by procedures that promote an accurate determination of whether the natural parents can and will provide a normal home." *M.S.*, 115 S.W.3d at 548–49 (quoting *Santosky*, 455 U.S. at 767, 102 S.Ct. 1388); *see also B.L.D.*, 113 S.W.3d at 353 (the State "*parens patriae* interest in promoting the welfare of the child" aligns with the parent's interest in a just and accurate decision). The State also has an interest in an accelerated timetable and a final decision that is not "unduly prolonged"[16] with negative psychological effects on the children left in limbo. *See M.S.*, 115 S.W.3d at 548; *B.L.D.*, 113 S.W.3d at 353. The State has a further "strong interest in ensuring that our trial courts have an opportunity to correct errors as a matter of judicial economy." *B.L.D.*, 113 S.W.3d at 353. "But the State's interests in economy and efficiency pale in comparison to the private interests at stake, and to the risk that a parent may be erroneously deprived of his or her parental rights and the child may be erroneously deprived of the parent's companionship." *M.S.*, 115 S.W.3d at 548. Moreover, the State's interests here in economy and efficiency are minimal: Chad filed his statement of points one week late and in conjunction with a timely motion for new trial; the court did have an opportunity to consider Chad's points of error at the hearing on the motion for new trial and for frivolousness.

Finally, the State has an interest in "maintaining procedural integrity," with the uniform and consistent application of procedural rules and law. *See id.* at 548–49. The State's interest in the procedural integrity of subsection (i) is not compelling in this case in light of the glaring procedural irregularity—delayed appointment of counsel during the critical period—necessitating the analysis. *Cf. id.* at 549 ("It is one thing, however, to have those procedures in place; it is quite another when counsel unjustifiably fails to follow those procedures."). On the whole, because the State's interest in protecting the child weighs in favor of appellate review, the State's interests in economy and efficiency pale in comparison to the parent's and children's interest in review, and the State's interest in consistent procedure is minimal under the facts presented, this factor also weighs in favor of allowing appellate review.

"The parent's, child's, and government's interest in a just and accurate decision dovetails with the third *Eldridge* factor—that of the risk of erroneous deprivation" of the parent-child relationship. *Id.* The

**16.** See discussion of legislative history, above.

"pivotal" fact in the analysis is that termination is "traumatic, permanent, and irrevocable." *Id.* Thus, "any significant risk of erroneous deprivation is unacceptable." *Id.* The Texas Family Code provides a detailed and comprehensive scheme for minimizing the risk of erroneous deprivation while protecting the child's best interest. *See B.L.D.*, 113 S.W.3d at 354–55. However, in this case, the application of that statutory scheme resulted in the appointment of counsel only after the deadline for filing the statement of points had lapsed. The risk of the erroneous deprivation of fundamental liberty rights by disallowing appellate review of any errors— including the sufficiency of the evidence— when an indigent parent, who timely and properly requests the statutory right to counsel, but for whom counsel is not appointed until after the deadline for filing the statement of points is, like the risk the court acknowledged in *M.S.*, "too high." *See M.S.*, 115 S.W.3d at 549.

The calibration of the *Eldridge* factors in this case overcomes the presumption that subsection (i) constitutionally prohibits appellate review. While facilitating speedy finality for children and the opportunity for trial courts to correct mistakes are proper goals, the Legislature has authorized a procedure, in barring untimely statements to the trial court of issues intended to be raised on appeal, that, in the particular facts of this case, has had a profoundly discriminatory effect. We find that barring appellate review, under subsection (i), of Chad's issues on appeal has the result of denying Chad the "fundamental fairness" to which he is entitled in parental rights termination proceedings and appeals. Subsection (i), as applied, has the effect of rendering Chad's right to effective counsel a "useless gesture" and renders counsel's efforts at appeal a "meaningless ritual." We therefore hold subsection (i) unconstitutional as applied to

an indigent parent not provided timely requested appointed counsel during the critical period before the deadline established in subsection (b).

### D. Remedy

Having found subsection (i) unconstitutional as applied, we deem Chad's late-filed statement of points timely filed under subsection (b). *See J.C.*, 108 S.W.3d at 916–17 (deeming procedural deadline compliance timely because compliance with a procedural deadline of constitutional dimension was made impossible by the court's failure to timely appoint counsel). We thus proceed with our review of Chad's points of error as raised in his statement of points.

## IV. Default Judgment

▮ Chad's first point of error actually raises multiple grounds of error. A point of error addressing more than one specific ground of error is multifarious. *Bell v. Tex. Dep't of Crim. Justice–Inst. Div.*, 962 S.W.2d 156, 157 n. 1 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *City of San Antonio v. Rodriguez*, 856 S.W.2d 552, 555 n. 2 (Tex.App.-San Antonio 1993, writ denied). If a court concludes that a point of error is multifarious, it may refuse to review it, or it may consider the point of error if it can determine with reasonable certainty the error about which the complaint is made. *Bell*, 962 S.W.2d at 157 n. 1. To the extent Chad's multifarious grounds of error are reasonably discernible, we address them below.

### A. Post–Answer Default

▮ The trial court found Chad had "wholly made default." The Texas Rules of Civil Procedure provide that "at any time after a defendant is required to answer, the plaintiff may ... take judgment by default against such defendant if he has not previously filed an answer...." Tex.R.

Civ. P. 239. Nonetheless, at "any time before a judgment by default has been actually announced by the court, a defendant has the right to file his answer." *City of Jefferson v. Jones,* 74 Tex. 635, 12 S.W. 749 (1889). Thus, a no-answer default may not be taken even if the defendant files his or her answer at the hearing to grant default. *Id.* (answer filed after hearing but before default rendered); *see also World Co. v. Dow,* 116 Tex. 146, 287 S.W. 241, 243 (1926) (answer filed day of hearing); *Dowell Schlumberger, Inc. v. Jackson,* 730 S.W.2d 818, 819 (Tex.App.-El Paso 1987, writ ref'd n.r.e.) (answer filed during hearing, before default found).

Chad's answer was due in March 2006, and default judgment was entered December 11, 2006. Chad never formally answered until after counsel was appointed (counsel filed a post-judgment "amended" answer in January 2007). Nonetheless, Chad contends the court erred because he did answer before entry of default.

### 1. October 8 Letter

 Chad asserts his October 8 letter to the district attorney was a pro se answer under Texas Rules of Civil Procedure 83, 84, and 85, since it identified the cause and style of the suit, expressed a desire for contact with the children, and expressed a desire for future involvement in their lives. *See In re K.B.A.,* 145 S.W.3d 685, 690–91 (Tex.App.-Fort Worth 2004, no pet.); *Thomas v. Collins,* 860 S.W.2d 500 (Tex. App.-Houston [1st Dist.] 1993, writ denied). Unlike the pro se letter-answers in those cases, Chad did not send his October 8 letter to, or file it with, the court.

Chad cites *Lyons v. Paul,* 321 S.W.2d 944 (Tex.Civ.App.-Waco 1959, writ ref'd n.r.e.), for the proposition that a letter sent to opposing counsel may serve as an "answer." But this case is distinguishable from *Lyons* on several grounds, most importantly that the citation in *Lyons* did not

state where an answer must be filed, while Chad's citation did. Chad has failed to show that sending his October 8 letter to the district attorney, in lieu of to the court's address as indicated on the citation, was the equivalent of filing an answer with the court. *See also Simmons v. McKinney,* 225 S.W.3d 706, 708–09 (Tex.App.-Amarillo 2007, no pet.) (refusing, under "constructive notice" approach, to allow "answer" faxed to opposing counsel but not filed with court to defeat default).

However, though not brought to the court by Chad, the October 8 letter was technically admitted into evidence, by the State, just moments before the entry of the default judgment. Rule 21 defines the procedure for filing a document: "Every pleading, plea, motion or application ... *unless presented during a hearing or trial,* shall be filed with the clerk of the court...." Tex.R. Civ. P. 21 (emphasis added). Although Chad's October 8 letter was "presented" to the court by the district attorney during a hearing or trial, we find that, under these facts, Rule 21 must be read in conjunction with Rule 239. *See* Tex.R. Civ. P. 239. Rule 239 allows that "at any time after a defendant is required to answer, the plaintiff may ... take judgment by default against such defendant if *he has not previously filed* an answer...." Tex.R. Civ. P. 239 (emphasis added). Thus, Rule 239 requires a defendant's active role in deciding to answer a suit. One consequence of filing an answer is that the defendant submits to the jurisdiction of the court. *See Simmons,* 225 S.W.3d 706 (citing *Forty–Acre Spring Live Stock Co. v. W. Tex. Bank & Trust Co.,* 111 S.W. 417, 419 (Tex.Civ.App.1908)). A letter written to opposing counsel, not the court, cannot be construed as a defendant's answer thereby submitting to the court's jurisdiction. Since Chad never attempted to pres-

ent the October 8 letter to the court, it is not a pre-default answer.

### 2. December 1 Letter

██ Chad alternatively contends that the December 1 letter was a pre-default answer. Chad asserts that, although received after entry of judgment on December 11,[17] the letter ·should be deemed filed as of the date of its mailing (December 1) under the mailbox rule. *See* Tex.R. Civ. P. 5. The mailbox rule provides that:

> If any document is sent to the proper clerk by first-class United States mail ... and is deposited in the mail on or before *the last day for filing* same, the same, if received by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed filed in time.

Tex.R. Civ. P. 5 (emphasis added). The record shows that the envelope containing Chad's December 1 letter is postmarked United States mail December 1 and was received on the day of, but after, judgment. If the mailbox rule applies, this would be deemed a timely answer.

Though we have not interpreted Rule 5 as applied to answers, this Court has previously found that "Rule 5's 'mailbox rule' does not apply where there is no preset deadline for filing a document." *Alvarez*

*v. Thomas,* 172 S.W.3d 298, 301 (Tex.App.-Texarkana 2005, no pet.); *see also In re Hearn,* 137 S.W.3d 681, 685 n. 5 (Tex.App.-San Antonio 2004, no pet.) ("Rule 5 does not deem a motion filed ... when no filing deadline is involved"); *Smith v. Tex. Dep't of Criminal Justice–Inst. Div.,* 33 S.W.3d 338, 341 (Tex.App.-Texarkana 2000, pet. denied) (mailbox rule would not operate to enlarge the time in absence of deadline for filing). This is because the "plain wording of the rule makes it applicable to filings for which there is a time limitation or a deadline." *Alvarez,* 172 S.W.3d at 301.

Although there is a "deadline" for filing an answer, which is, technically, the Monday next after twenty days after the date of service, *see* Tex.R. Civ. P. 99(b), an answer may also be filed at any time before default. *See* Tex.R. Civ. P. 239; *Jones,* 74 Tex. 635, 12 S.W. 749. The relevant question, then, is whether Rule 5 applies to the second indeterminate "deadline" of the time period after the Monday next after twenty days after the date of service but before default. Consistent with our prior opinions in *Alvarez* and *Smith,* we find that this indeterminate deadline is not a filing deadline under Rule 5. *But see Thomas v. Gelber,* 905 S.W.2d 786, 789 (Tex.App.-Houston [14th Dist.]

---

17. As noted above, the record indicates two different dates and times at which the December 1 letter was apparently received, both post-default: (1) the stamped date "Dec 11," and handwritten notation "1:30 p.m."; and (2) the official clerk file-stamp dated December 12, 3:07 p.m. The envelope was addressed to the court clerk, but with what is apparently the district attorney's courthouse suite number. If the record had shown that the clerk had received these documents and, without file-stamping them, had sent them to the judge, the documents would be deemed filed at the time of the clerk's first actual receipt. *See, e.g., Warner v. Glass,* 135 S.W.3d 681, 684 (Tex.2004) (a party "should not be penalized for errors made by the court clerk"); *Mr. Penguin Tuxedo Rental & Sales, Inc. v. NCR*

*Corp.,* 787 S.W.2d 371, 372 (Tex.1990) (deemed filed when delay in filing was attributable to courthouse employee); *Standard Fire Ins. Co. v. LaCoke,* 585 S.W.2d 678, 680 (Tex.1979) ("an instrument is deemed filed in law at the time it is left with the clerk, regardless of whether the file mark gives some other date"). The record was not developed on when the documents entered the courthouse or how the documents ended up on the judge's desk shortly after entry of default: whether delivered by the court post, although not addressed to ihe judge; whether delivered by the clerk, after receipt as addressed on the envelope, without having been stamped first; or whether delivered by the district attorney, after receipt as also addressed on the envelope.

1995, no writ) (holding that the "last day for filing" an answer is the time of default). That is, for purposes of the application of the mailbox rule, the last day for filing an answer is the Monday next after twenty days after the date of service.[18] Although an answer could still be filed at any point after that date but before entry of default, the mailbox rule will no longer apply to extend the filing date, or allow for a deemed filing date. Thus, Chad's December 1 letter was appropriately not deemed filed on December 1; with its filing after entry of judgment, the December 1 letter is not a pre-default answer.

### B. Pre–Default Continuance

Having decided that neither the October 8 nor the December 1 letter was a pre-default answer, we need not reach Chad's contention that he was entitled, on the basis of one or both of these "answers," to his requested continuance. *See* TEX.R. CIV. P. 251 ("No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit ...."); *see also In re H.R.,* 87 S.W.3d 691, 701 (Tex.App.-San Antonio 2002, no pet.) (not abuse of discretion to deny parent's last-minute motion for continuance unsupported by affidavits or documentation and not explaining months of inactivity and noncompliance).

### C. Pre–Default Attorney

■ The statute requires the trial court to appoint counsel for "an *indigent* parent ... who *responds in opposition* to the termination" requested in a suit by a governmental entity. TEX. FAM.CODE ANN. § 107.013(a)(1) (emphasis added). Chad

does not explicitly address the statutory requirements, but asserts that the trial court should have appointed counsel pre-default. Presuming, without deciding, that Chad's request for a postponement or continuance constitutes "responds in opposition," Chad still fails to show whether and how he asserted indigence before default. Though Chad correctly notes that the court knew that Chad was incarcerated, Chad fails to show how the fact of incarceration, alone, must be equated with indigence.

### D. Post–Default Attorney As of December 11, 2006

Chad also asserts, in point of error one, that the trial court committed reversible error in not appointing counsel at the "critical point" of December 11, 2006. To the extent Chad asserts the right pre-default, it is addressed above. To the extent Chad asserts the right post-default, we note that Chad does not attempt to show harm from the judge's delay in appointing the attorney, other than in the discussion of the constitutional implications discussed and addressed above.[19] *See* TEX. R.APP. P. 44.1; *Lone Star Steel v. Scott,* 759 S.W.2d 144, 147 (Tex.App.-Texarkana 1988, writ denied) (harmless-error analysis applies to all errors, even those involving the violation of procedural rules couched in mandatory language).

### E. Access to Courts

■ Chad further asserts, in point of error one, that the default judgment represents a violation of his due-process rights, as an inmate, to access the courts. "[L]itigants cannot be denied access to the

---

18. We do not mean that the mailbox rule would not apply to the definite deadline—i.e., 10:00 a.m. on the Monday next after twenty days after the date of service—for filing an answer. *See Milam v. Miller,* 891 S.W.2d 1, 2 (Tex.App.-Amarillo 1994, writ ref'd).

19. Chad's attorney filed a notice of appeal and motion for new trial, and requested and participated in a hearing on the motion for new trial, for indigence, and for frivolousness.

courts simply because they are inmates." *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003). Chad asserts that the court erred in not allowing Chad to appear in person or, alternatively, through an attorney. The cases he cites, however, are distinguishable, since Chad never requested, pre-default, either a bench warrant or an attorney. A trial court has no duty to sua sponte bench warrant an incarcerated parent to court. *Id.* at 166. The incarcerated parent bears the "burden to establish his right to relief" to the trial court. *Id.* Since Chad did not request access to the courts before his default, he may not now defeat the default merely by the fact of his incarceration.

In sum, point of error one—in all its parts—is overruled.

## V. Motion for New Trial Under *Craddock*

 Alternatively, Chad asserts, in point of error two, that he was entitled to a new trial post-default under *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). The appropriate inquiry on review when a default judgment is attacked by motion for new trial is on "what has always been and always should be the critical question in any default judgment: 'Why did the defendant not appear?'" *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006). If "the answer to the critical question is 'I got the suit papers but then ...'" the default judgment should be set aside only if the defendant proves the three familiar *Craddock* elements." *Id.* (citing

*Craddock*, 133 S.W.2d at 126). If the *Craddock* standard has been met, we reverse the refusal to grant a new trial as an abuse of discretion. *See Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994).

 "A trial court should set aside a default judgment and grant a new trial if the defendant shows: (1) the failure to appear was not intentional or the result of conscious indifference, but was due to accident or mistake; (2) the defendant has a meritorious defense; and (3) granting the motion will not cause delay or injure the plaintiff." *In re J.P.*, 196 S.W.3d 434, 438–39 (Tex.App.-Dallas 2006, no pet.) (citing *Craddock*, 133 S.W.2d at 126). "In applying the *Craddock* factors, the trial court considers 'the knowledge and acts of the defendant' as reflected in the record." *Id.* (citing *Holt Atherton Indus. v. Heine*, 835 S.W.2d 80, 82 (Tex.1992)). While courts are relatively lenient on the first prong,[20] a defendant must not have known of the action and just ignored it. *See R.R.*, 209 S.W.3d at 115.

 Chad asserts that the combination of his incarceration (with attendant inability to appear), indigence, and lack of counsel is sufficient to show that his failure was not intentional or a result of his conscious indifference. Chad points to his letters as proof of his attempts to respond to the suit as he knew best. Chad argues that the December 1 letter is sworn and provides a plausible reason for his failure to answer: he understood the goal to be reunification with the mother and supported that goal while he was unavailable in prison.[21] In-

---

20. *See In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) ("some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care").

21. The trial court conducted a hearing on Chad's motion for new trial. Unlike the evi-

dence presented at the hearing in *R.R.*, 209 S.W.3d at 114, here, no evidence, by affidavit or otherwise, was presented that Chad made a mistake in attempting to file an answer or that an accident prevented his filing. Neither was any evidence presented that Chad's fail-

deed, Chad's letters to the district attorney and to the court seemed to start after the goal changed from reunification to termination.

But we are not persuaded that Chad's letters suffice. Chad provides no reason why he initially sent letters to the district attorney but not the court. Chad's stated excuse for his failure to file documents with the court—that he did not oppose the action initially—reflects intentional failure to answer or a conscious indifference, not a mistake or accident. The fact that Chad apparently later changed his mind is not persuasive. The "filing of a late answer, regardless of how soon after the deadline it is filed, does not, by itself, negate conscious indifference to filing a timely answer." *Lemons v. Thomas*, No. 05–00–01247–CV, 2001 WL 710330, at *1 (Tex. App.-Dallas June 26, 2001, no pet.) (not designated for publication).

Because Chad does not show that his failure to appear was not intentional or the result of conscious indifference, he does not meet the first *Craddock* prong. We need not address the remaining prongs. We overrule the point of error.

## VI. Legal and Factual Sufficiency

### A. Preservation of Error

In his fifth point of error, Chad asserts that legally and factually insufficient evidence supports each of the grounds for termination and the finding that termination was in the children's best interests. The State, as a preliminary matter, asserts that Chad's claims of insufficient evidence are not "sufficiently specific" to allow review under subsection (i).

 Subsection (i) states that "a claim that a judicial decision is contrary to the evidence or that the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for review." TEX. FAM.CODE ANN. § 263.405(i). "The plain language of the statute indicates the Legislature intended to bar our consideration of global, nonspecific claims of evidentiary insufficiency in a Statement of Points." *In re N.L.G.*, No. 06–06–00066–CV, 2006 WL 3626956, at *3 (Tex.App.-Texarkana Dec. 14, 2006, pet. denied) (mem.op.). But a statement of points' specific, nonglobal claims of insufficiency are not precluded from review. *See In re A.J.H.*, 205 S.W.3d 79, 80–81 (Tex.App.-Fort Worth 2006, no pet.) (finding statement of points sufficiently specific when evidentiary sufficiency point references specific paragraphs of judgment and specific grounds of termination); *S.B.*, 207 S.W.3d at 882 (finding sufficiency points of error "specific enough"). *But cf. C.M.*, 208 S.W.3d at 92 n. 3 (statement of desire to appeal "from all portions of the judgment" not sufficiently specific to preserve seven issues on appeal); *A.C.A.*, 2006 WL 1172331, at *1 (a statement that "evidence was factually and legally insufficient to support the judgment" in motion for new trial "is insufficient to preserve the issue for appeal"); *A.H.L.*, 214 S.W.3d at 54 (same).

As the Fort Worth court has noted in assessing the sufficiency of the sufficiency point of error, we are constrained to construe termination statutes strictly in favor of the parent and "we are prohibited from construing the statute in a way that liberally expands its reach and consequently favors the State." *S.B.*, 207 S.W.3d at 882. Construing the statute in the parent's favor, and after considering similar cases, we find that Chad's separate complaints as to each of the separate grounds of termination and the best interest finding, as stated in his statement of points, are suffi-

ure was not the result of intentional conduct or conscious indifference.

ciently specific to satisfy the requirements of subsection (i).

## B. Standards of Review

■ The burden of proof for termination of parental rights is clear and convincing evidence. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2006); *J.F.C.*, 96 S.W.3d at 263. The evidence is clear and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be established by the State. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex.2002); *B.S.W.*, 87 S.W.3d at 769.

In reviewing the legal sufficiency of the evidence, we view all the evidence in a light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. TEX. FAM. CODE ANN. § 101.007 (Vernon 2002); *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25. Looking at the evidence in the light most favorable to the judgment means that we must assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *J.F.C.*, 96 S.W.3d at 266.

■ When reviewing a factual sufficiency challenge to a parental rights termination, we consider the evidence the fact-finder could reasonably have found to be clear and convincing. *See id.; see also C.H.*, 89 S.W.3d at 25–26. In applying this standard to a trial court's findings, we ask whether there was sufficient evidence pre-sented to produce in the mind of a rational fact-finder a firm belief or conviction as to the truth of the allegations sought to be established. *In re N.R.*, 101 S.W.3d 771, 774 (Tex.App.-Texarkana 2003, no pet.).

## C. Discussion

■ The State has the burden of proving, by clear and convincing evidence, both statutory ground(s) for termination, *see* TEX. FAM.CODE ANN. § 161.001(1), and that termination is in the best interests of the children. *See* TEX. FAM.CODE ANN. § 161.001(2). On review, if we find that one of the alleged predicate grounds for termination under Section 161.001(1) is supported by sufficient evidence, it is not necessary to review the remaining predicate grounds. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex.2003); *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990).

■ As previously noted, the "natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Thus, we strictly scrutinize parental rights termination proceedings; when construing the predicate grounds for termination of parental rights, "involuntary termination statutes are strictly construed in favor of the parent." *Id.*

### 1. Predicate Grounds

The State alleged, and the court found, termination appropriate under three grounds: endangering conditions,[22] endangering conduct,[23] and constructive abandonment.[24]

■ While "endanger" means "more than a threat of metaphysical injury or the

---

**22.** TEX. FAM.CODE ANN § 161.001(1)(D).

**23.** TEX. FAM.CODE ANN. § 161.001(1)(E) (the parent "engaged in conduct or knowingly placed the child with persons who engaged in

conduct which endangers the physical or emotional well-being of the child").

**24.** TEX. FAM CODE ANN. § 161.001(1)(N).

possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. Rather, 'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (citations omitted).

▆▆▆▆ Conduct that "subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct." *A.J.H.*, 205 S.W.3d at 81 (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.-Fort Worth 2004, pet. denied)). Continued narcotic use after the children's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct. *See Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Nonetheless, the evidence of endangerment must be "the *direct* result of the parent's conduct." *In re D.T.*, 34 S.W.3d 625, 634 (Tex.App.-Fort Worth 2000, pet. denied). The fact of "imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child." *Boyd*, 727 S.W.2d at 533 (but noting that "imprisonment is certainly a factor to be considered by the trial court on the issue of endangerment").

▆▆▆▆ The evidence shows that Chad, who had notice of the ongoing parental rights termination proceeding, used drugs during the pendency of that proceeding. The Mississippi court documents dated August 15, 2006, show that Chad, in violation of the terms of his "post-release supervision" on the possession of precursors with intent to manufacture methamphetamine conviction, "admitted that he did a line of powder 3 nights ago." Chad engaged in this conduct in violation of the terms of his "post-release supervision" and knowing of the risk of re-incarceration. A parent's "propensity toward anti-social behavior, as demonstrated by his criminal convictions and his behavior while in prison, is evidence that he may be an emotional or physical danger" to the child now or in the future. *B.S.W.*, 87 S.W.3d at 773. Not only did Chad again exhibit anti-social behavior, Chad engaged in this conduct despite his notice of the State's allegations of Ashley's neglect and the risk to his own parental rights. *See A.J.H.*, 205 S.W.3d at 81; *see also In re S.T.*, 127 S.W.3d 371, 378–79 (Tex.App.-Beaumont 2004, no pet.) (father's continued drinking, and charges of driving while intoxicated, though aware of neglectful spouse's risk to children, sufficient proof of endangering conduct).

▆▆▆▆ We view Chad's conduct in conjunction with other evidence supporting a course of endangering conduct: several State employee witnesses testified that Ashley told them Chad battered her, and one—Child Protective Services (CPS) employee Nikki Payne—testified Ashley told her Chad had beaten her in the children's presence; Payne testified she "believes" the State of Mississippi was involved in trying to get Ashley to a battered women's shelter away from Chad. CPS employee Tina Freeman, who admitted to never having contact with Chad, testified that, based on what she learned from unidentified sources, Chad "has a history of domestic violence. He has a history of drug usage. He has not supported the children financially." Payne testified Ashley told her she got drugs from Chad in the year 2000. Several of the State's witnesses testified Ashley reported that Chad had stalked her, pursued her, and forced her off the road during a visit to Texas in June 2006; Tammy Stidham, a CPS supervisor, testi-

fied to Chad being "irate" and throwing toys around the CPS office to the point that CPS employees had to call the police, when Chad's one known attempt to visit the children during the pendency of the case was thwarted in that same June 2006 visit to Texas.[25] The State also introduced evidence of Chad's anti-social behavior in the form of criminal convictions for burglary in Gregg County in the 1990s, including revocation of community supervision. The record contains no evidence contrary to that presented by the State.[26]

A reasonable and rational fact-finder could have formed a firm belief or conviction that Chad engaged in conduct which exposed his children to loss or injury and jeopardized the children's emotional and physical well-being because of Chad's continued drug use, subsequent incarceration, and anti-social conduct generally, at the CPS office in June 2006, and over the years toward Ashley—his then-wife and the children's mother. The evidence is legally and factually sufficient to support the predicate finding of conduct endangerment. Having found legally and factually sufficient evidence of Chad's conduct endangering the children, we need not assess the sufficiency of the evidence on the other predicate grounds for termination.

### 2. Best Interests of the Children

Chad also asserts that the evidence is legally insufficient as to a finding that

termination is in the "best interest of the child" since such finding was not included in the court's filed findings of fact and conclusions of law. Though the court had found termination of Chad's rights to be in the children's best interests at the bench trial, in the findings of fact and conclusions of law, the court omitted a finding that termination of the parent-child relationship was in the children's best interests. Instead, the court found only that appointment of the State as managing conservator was in the children's best interests, a finding that is not necessarily inconsistent with the continuation of Chad's parental rights. *See, e.g.,* TEX. FAM.CODE ANN. § 263.404 (Vernon 2002).

■■■ The Rules provide:

When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery ... embraced therein. The judgment may not be supported on appeal by a presumed finding upon any ground of recovery ... no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.

TEX.R. CIV. P. 299. "Best interest of the child" is not a separate "ground of recov-

---

25. Stidham testified that, when Chad came to the CPS office in June 2006, he said Ashley had said he could see his children at that location. Stidham had responded that "the judge determined his visitation rights" and refused Chad's request. Stidham testified that Chad called Payne "a few choice names," would not calm down, and started throwing the toys he had brought for his children. Stidham called the police, and Chad left with the toys.

26. Though the State's witnesses were "cross-examined" by the children's ad litem, the ad

litem's questions indicate an alignment with the State's interest in termination. Chad complains, correctly, that most of the record evidence is hearsay. However, Chad is incorrect that we should disregard the hearsay testimony. "Rule 802 says, 'Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.' Nothing in rule 802 limits its application to contested hearings." *Tex. Commerce Bank, Nat'l Ass'n v. New,* 3 S.W.3d 515, 517 (Tex.1999) (quoting TEX.R. EVID. 802).

ery" but is a statutorily prescribed "element" for parental rights termination. *See J.F.C.*, 96 S.W.3d at 262. Thus, under Rule 299, we must presume, in support of the judgment, the court's omitted finding on this element in the filed findings of fact and conclusions of law.

We review findings of fact entered in a case tried to the court, including presumed findings on omitted elements, for legal and factual sufficiency of the evidence. *See J.F.C.*, 96 S.W.3d at 276; *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985); *see also Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). There is a "strong presumption that the best interest of the child is served by keeping custody in the natural parent." *H.R.*, 87 S.W.3d at 700. The best interest of the child is determined by reference to an extended number of factors, including, but not limited to:

(A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976) (footnotes omitted). Additionally, the Texas Supreme Court has cited Section 263.307 of the Texas Family Code for other factors to consider in determining the best interests of the children and the willingness of a child's family to effect positive changes. *See R.R.*, 209 S.W.3d at

116; *see also* TEX. FAM.CODE ANN. § 263.307 (Vernon 2002). Some of the *Holley* factors overlap with the statutory considerations. Additionally, some of the *Holley* factors overlap with evidence supporting the predicate grounds for termination. *See In re C.E.K.*, 214 S.W.3d 492, 503 (Tex.App.-Dallas 2006, no pet.).

One of the statutory factors to consider is whether there is a history of abusive or assaultive conduct by the child's family. *See* TEX. FAM.CODE ANN. § 263.307(7). While the record primarily consists of evidence of Ashley's conduct, since she had possession of the children in Gregg County, there is also evidence of Chad's acts of domestic violence, as previously noted. During the marriage of Chad and Ashley, Chad physically abused Ashley. Payne said that police reports from Mississippi showed a lot of domestic violence involved with the family. At one time, the Human Services Department in Mississippi was involved with "CPS-type" services. Ashley was urged to go to a women's shelter after being battered by Chad. Further, during the month of June 2006, Chad came to Longview, stalked Ashley around Longview, and tried to force the automobile she was driving off the road. Ashley called the sheriff's department because she was fearful of him and thought he was under the influence of drugs. Ashley further told the CPS worker that she was fearful because of his history of "beating on her." The evidence shows Chad had "punched her in the face, … kicked her, pulled her by the hair."

Another factor to consider is whether there is a history of substance abuse by the child's family. *See* TEX. FAM.CODE ANN. § 263.307(8). The record demonstrates a history of Chad's involvement with illegal substances. Chad was convicted in October 2004 in Mississippi for possession of precursor chemicals with intent to manu-

facture a controlled substance and was assessed a five-year sentence (including post-release supervision). After his release to community supervision, his release was revoked and he was incarcerated when it was determined that he had tested positive for cocaine and methamphetamine. Additionally, there was testimony that Ashley used drugs during her first pregnancy and that Chad supplied her with those drugs.

The children all have serious emotional and physical needs and vulnerabilities, considerations under both the *Holley* and statutory factors. *See Holley*, 544 S.W.2d at 371–72 (factors B, C, D). All three children had severe dental problems, a physical need addressed shortly after the State assumed custody of the children. All three children have behavioral problems; the young twins, according to East Texas Court Appointed Special Advocate (CASA) representative Sandra Sadler, are "wild," hyper, and overstimulated as a result of what she surmised was a chaotic environment with drug exposure. Freeman testified that the twins likely had "drug exposure in vitro." The evidence indicates that the behavioral problems (cursing, hitting other children, and screaming) are ongoing, and the children are in counseling. One of the children is taking medication for Attention Deficit Hyperactivity Disorder (ADHD) and another for agitation. Sadler opined that the children require boundaries, limits, and parenting that their parents could not provide.

While it is true that Chad has been incarcerated during a portion of the children's lives, the evidence does not show that either parent has demonstrated parenting skills for the minimal needs of the children. *See* TEX. FAM.CODE ANN. § 263.307(12) (best interest factors include provision of minimal needs of health care,

a safe home environment, protection from repeated exposure to violence); *see also Holley*, 544 S.W.2d at 371–72 (factors D, G). The evidence reveals that the health needs of the children were neglected; the home life established by Ashley and Chad, when they were together, included several episodes of violence requiring State intervention; court records establish Chad used cocaine and methamphetamine and supplied drugs to Ashley even during her pregnancy. Payne testified the chaotic home life illustrates that the parents are unable to provide for the needs of the children.

Further, the testimony showed that Chad did not have a support system for the children through an extended family. *See* TEX. FAM.CODE ANN. § 263.307(13). Payne testified the State could not place the children with relatives. Payne stated that only Ashley's great-grandmother had come forward as a possible placement—and for only one of the children—but the great-grandmother "was fearful of Chad as well, because of his violent temper, and she didn't want any problems with him."

The trial court is also allowed to consider the acts or omissions of the parent, and any excuse for the parent's actions, in determining if the parent-child relationship is a proper one. We have already discussed the violence in the home and the conviction for possession of illegal substances. Additionally, Chad was convicted, in Gregg County in 1993, and placed on community supervision for burglary of a habitation. A few months later, his community supervision was revoked for committing another offense in Gregg County—burglary of a vehicle. Chad was sentenced to eight years' confinement on the revocation. At the same time, he was sentenced for the burglary of a vehicle offense. According to the record, Chad also was convicted in Rusk County of another burglary

of a motor vehicle offense in 1994. While criminal convictions alone do not necessarily lead to the conclusion that termination of parental rights is in the child's best interest, a pattern of criminal actions leading to incarceration is certainly a factor to consider. *In re S.M.L.*, 171 S.W.3d 472 (Tex.App.-Houston [14th Dist.] 2005, no pet.). The evidence does not suggest any excuse for such acts or omissions.

The record is silent as to several of the considerations (the desires of the children, programs to assist the parent, the parent's willingness to effect environmental change). *See* Tex. Fam.Code Ann. § 263.307(10), (11); *Holley,* 544 S.W.2d at 371–72 (factors A, E). The record does show that Chad failed to comply with court-ordered support in both this case and in a prior case concerning only S.K.A. The record thus speaks to Chad's unwillingness to cooperate and effect positive personal changes. *See* Tex. Fam.Code Ann. § 263.307(10), (11). As far as the future plans for the children are concerned, the record shows that CPS will seek to place the twins for adoption and the oldest child with the maternal grandmother.

When considering all of the factors for which there is evidence in the record, we conclude that the evidence is legally and factually sufficient to support the trial court's determination that termination of Chad's parental rights is in the best interests of the children.

## VII. Conclusion

We find subsection (i)'s procedural bar to review unconstitutional as applied to an indigent parent, who after proper request, was not provided appointed counsel during the critical period before the deadline established in subsection (b). Therefore, we have addressed issues raised in the points of appeal filed immediately after counsel was appointed. On reaching the issues raised on appeal as presented in the statement of points, we overrule each of the points of error.

Accordingly, we affirm the judgment.