NO. 07-07-0042-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 25, 2008

_____

IN THE INTEREST OF J.O.A., T.J.A.M., T.J.M., and C.T.M., CHILDREN

_____

FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;

NO. 7019; HONORABLE PHIL VANDERPOOL, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

This is an accelerated appeal of a final order rendered under subchapter E of

chapter 263 of the Texas Family Code pertaining to the placement of four children.  As to

two children, J.O.A. and T.J.A.M.,[1] the order names a relative of the children as their managing conservator; and, as to two children, T.J.M. and C.T.M., the order involuntary terminates the parental rights of Appellants, Timothy and Trena,[2] and appoints the Texas Department of Protective and Regulatory Services as managing conservator. Appellants jointly raise ten points of error. Points of error one and two challenge the constitutionality of § 263.405(b) and (i) of the Texas Family Code,[3] while points of error three through ten challenge the findings of the trial court and the sufficiency of the evidence.

The Department's brief presents eight issues and the brief filed on behalf of the children by their attorney ad litem presents four issues. Although not clearly designated as such, the "issues" presented by the Department and the attorney ad litem are in actuality responses to Appellants' points. When practicable, an appellee's brief should respond to the appellant's issues or points in the order that the appellant presented those issues or points. Tex. R. App. P. 38.2(a)(2). Because both the Department and the

---

[1]To protect the parents' and children's privacy, we refer to the parents by their first names and the children by their initials. *See* Tex. Fam. Code Ann. § 109.002(d) (Vernon 2002).

[2]The trial court's order reflects Trena as Treena; however, throughout the record she is referred to as Trena. Thus, we refer to her as Trena.

[3]Unless otherwise indicated, this and all future references to sections refer to the Texas Family Code Annotated (Vernon 2002 & Supp. 2007).

attorney ad litem contend that the order of the trial court should be affirmed, we will treat their issues as a response to Appellants' points of error and will not otherwise address their issues individually.

Relying upon § 263.405(i), the Department contends that Trena and Timothy are precluded from having any of their arguments addressed because they failed to file a statement of points with the trial court within fifteen days after the entry of the final order as required by § 263.405(b). The Department further contends that constitutional complaints were waived because they were not timely and properly presented to the trial court and preserved for review. As to the non-constitutional issues, the Department and the attorney ad litem contend that the trial court's order is supported by the law and the evidence. We affirm in part and reverse and remand in part.

## Procedural Background

The Department of Family and Protective Services filed suit seeking (1) determination of the parentage of J.O.A.;[4] (2) termination of the parental rights of Trena as to her children J.O.A., T.J.A.M., T.J.M., and C.T.M.; and (3) termination of the parental rights of Timothy as to his children T.J.A.M., T.J.M., and C.T.M. Following a two-part

---

[4]It is undisputed that Timothy is not J.O.A.'s natural father.

3

hearing conducted on August 16, 2006, and February 8, 2007,[5] the court signed an *Order of Termination and Final Order in Suit Affecting the Parent-Child Relationship* which provided:

> (1)     as to J.O.A., the trial court signed an order terminating the parental rights, if any, of any alleged or unknown father, did not terminate Trena's parental rights; but did find that the appointment of Trena as managing conservator would not be in the child's best interest and then appointed J.O.A.'s maternal grandmother as his managing conservator, without appointing Trena as a possessory conservator;
>
> (2)     as to T.J.A.M., the trial court did not terminate either Trena or Timothy's parental rights; however, the court did find that the appointment of either parent as managing conservator would not be in the child's best interest and then appointed the child's maternal grandmother as her managing conservator, without appointing either Trena or Timothy as a possessory conservator; and
>
> (3)     as to T.J.M. and C.T.M., the trial court terminated Trena and Timothy's parental rights and appointed the Department of Family and Protective Services as managing conservator.

The trial court's final order was signed on February 16, 2007. On February 21st, Trena's trial counsel filed her notice of appeal and also filed a motion to withdraw. On February 22nd, Timothy's trial counsel filed his notice of appeal and also filed a motion to

---

[5]Although this proceeding was subject to dismissal on August 22, 2006, pursuant to § 263.401(a), at the conclusion of the hearing on August 16, 2006, without making a final ruling, the trial court announced that it was taking the matter under advisement. On August 18, 2006, the trial court granted an extension, pursuant to § 263.401(b), set a new final hearing date of February 8, 2007, and a new dismissal date of February 17, 2007.

4

withdraw. The trial court never ruled on the motions to withdraw; however, on March 5th, (seventeen days after the date the final order was signed), the court appointed appellate counsel to represent Trena, and on March 15th (twenty-seven days after the date the final order was signed), the same appellate counsel was appointed to represent Timothy. Neither Trena nor Timothy filed a statement of points within fifteen days afer the date the final order was signed as required by § 263.405(b) or a timely motion for new trial.

**Factual Background**

Trena is the biological mother of J.O.A., a male child born November 10, 1989. Trena and Timothy are the biological mother and father of T.J.A.M., a female child born December 29, 1996, and T.J.M. and C.T.M., male twins born July 27, 2005.

J.O.A. has lived with his maternal grandmother since he was four years old. T.J.A.M. has primarily lived with Trena, except for a period of approximately one and half years while Trena was incarcerated. During that period, T.J.A.M. also lived with Trena's mother. T.J.M. and C.T.M. have never lived with either Trena or Timothy because they were removed from their parents and placed in foster care before ever leaving the hospital after their birth.

5

Trena and Timothy have had many problems during their marriage, mainly due to Trena's persistent drug use. As a result, Trena and Timothy have not always lived together. During periods of their separation, T.J.A.M. would primarily stay with either Trena or Trena's mother. During their marriage, Trena was placed on probation for domestic violence committed against Timothy. When Timothy was in his teens he was incarcerated for aggravated robbery.[6] His parole was subsequently revoked based upon an incident of domestic violence committed against Trena.

For several years, Trena struggled with her use of drugs, primarily cocaine and marihuana. She would have periods of sobriety and periods of drug use. Timothy also struggled with the use of marihuana. Trena and Timothy have attended a substance abuse program together. Trena was using drugs in early 2005 when she learned that she was pregnant with C.T.M. and T.J.M. When the twins were born, they were premature. At that time, Trena admitted to marihuana use and tested positive by urine drug screen for cocaine and barbiturates. At trial, she admitted to going on a five hour cocaine binge on July 25, 2005, just prior to her giving birth to the twins.

---

[6]Timothy was 33 years of age when the final order was entered.

This episode of involvement by the Department began when the twins were born. On August 15, 2005, prior to the twins being released from the hospital, the Department intervened on behalf of the children the subject of this suit and removed them from the custody of Trena and Timothy. The Department's immediate concern primarily centered around the twins and Trena's use of drugs. The two older children, J.O.A. and T.J.A.M., were placed with their maternal grandmother and the twins, T.J.M. and C.T.M., were placed with foster parents.

After the removal of the children, Trena was incarcerated from August 6, 2005, until December 12, 2005, for possession of cocaine. In February of 2006, she was asked to leave a women's shelter after she tested positive for cocaine. She was incarcerated from June 5, 2006, until June 16, 2006, for criminal trespass. At the August 2006 hearing, Trena testified that she last used cocaine on May 25, 2006. She then tested positive for cocaine on November 1, 2006 and January 3, 2007. During the period subsequent to the removal of the children, she also failed to maintain steady employment or a place of residence.

After the removal of the children, Timothy was allowed supervised visitation with T.J.M. and C.T.M; however, he was never allowed to have possession of the twins alone.

7

Timothy did receive a copy of his service plan on September 26, 2005. He was incarcerated from November 2005 until January 2006 on domestic violence charges that allegedly took place in 2003. Those charges were subsequently dismissed after Trena admitted to the prosecutor that she had falsely accused Timothy. In February 2006, Timothy was advised that he needed to attend parenting classes and go for a drug screen prior to February 24, 2006. He did not complete that drug screen. Timothy subsequently moved to California where he attended a substance abuse program in May 2006. He testified that he also attended parenting classes while in California. Timothy tested positive for marihuana use in July 2006. At trial, Timothy admitted to using marihuana and testified that the last time he had used marihuana was on or about June 28, 2006. He missed a drug screen in October 2006. Additionally, Timothy was delinquent on his child support. After returning to Texas, Timothy had steady employment, a better car and house, had daycare available, and was attending parenting classes. He also presented evidence of three negative drug tests.

## § 263.405(b) Statement of Points

At the outset, we must address the Department's contention that the failure to timely file a statement of points, as required by § 263.405(b) of the Texas Family Code,

8

precludes review of any of the issues raised. A party intending to appeal a final order rendered under subchapter E of chapter 263 of the Texas Family Code must file with the trial court, no later than fifteen days after the final order is signed, a statement of points on which the party intends to appeal. § 263.405(b). The statement of points may be filed separately or it may be combined with a motion for new trial. *Id.* An appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of points. § 236.405(i).

While several of our sister courts have questioned the practical application and constitutional validity of this statute and have recommended that the Legislature reconsider the statute in light of the potentially harsh effect of its application,[7] every intermediate appellate court in this State has agreed that the clear language of the statute prohibits appellate courts from considering points not properly preserved by the timely filing of a statement of points.[8]

---

[7]*In re R.M.R.*, 218 S.W.3d 863, 864 (Tex.App.–Corpus Christi 2007, no pet.); *Pool v. Tex. Dep't. of Family & Protective Services*, 227 S.W.3d 212, 215 (Tex.App.–Houston [1st Dist.] 2007, no pet.); *In re D.A.R.*, 201 S.W.3d 229, 231 (Tex.App.–Fort Worth 2006, no pet.); *In re E.A.R.*, 201 S.W.3d 813, 814 (Tex.App.–Waco 2006, no pet.) (Vance, J., concurring).

[8][1st] *Pool v. Tex. Dep't. of Family & Protective Services*, 227 S.W.3d 212, 215 (Tex.App.–Houston [1st Dist.] 2007, no pet.); [2nd] *In re D.A.R.*, 201 S.W.3d 229, 231 (Tex.App.–Fort Worth 2006, no pet.); [3rd] *Coey v. Tex. Dep't of Family & Protective*

The order being appealed in this case is a final order rendered under subchapter E of chapter 263 of the Texas Family Code; therefore, Trena and Timothy were required to file a statement of points. The failure to timely file a statement of points does not deprive the appellate court of jurisdiction over the appeal; however, it is a procedural prerequisite to the appellate court's authority to consider any issue presented. *See* § 263.405(i). *See also In re R.C.*, ___S.W.3d___ , No. 07-06-0444-CV, 2007 WL 1219046, *1 (Tex.App.–Amarillo April 25, 2007, no pet.). Because Trena and Timothy's points were not preserved for review as otherwise required by § 263.405(b), we will proceed to consider their constitutional challenge contending that their federal and State due process right to

---

*Services*, No. 03-05-0679-CV, 2006 WL 1358490, *2 (Tex.App.–Austin May 19, 2006, no pet.) (not designated for publication); [4th] *In re S.E.*, 203 S.W.3d 14, 15 (Tex.App.–San Antonio 2006, no pet.); [5th] *In re M.D.*, __ S.W.3d __, No. 05-06-0779-CV, 2007 WL 1310966, *1 (Tex.App.–Dallas May 7, 2007, no pet.); [6th] *In re H.H.H.*, No. 06-06-0093-CV, 2006 WL 2820063, *1 (Tex.App.–Texarkana Oct. 4, 2006, no pet.) (not designated for publication); [7th] *In re R.C.*, __ S.W.3d __, No. 07-06-0444-CV, 2007 WL 1219046 (Tex.App.–Amarillo April 25, 2007, no pet.); [8th] *In re C.B.M.*, 225 S.W.3d 703, 706 (Tex.App.–El Paso 2006, no pet.); [9th] *In re J.F.R.*, No. 09-06-0115-CV, 2007 WL 685640, *1 (Tex.App.–Beaumont March 8, 2007, no pet.) (not designated for publication); [10th] *In re J.W.H.*, 222 S.W.3d 661, 662 (Tex.App.–Waco 2007, no pet.); [11th] *In re F.C.G.*, No. 11-07-0068-CV, 2007 WL 2823685, *1 (Tex.App.–Eastland Sept. 27, 2007, pet. filed Nov. 6, 2007) (not designated for publication); [12th] *In re J.H.*, No. 12-06-0002-CV, 2007 WL 685640, *2 (Tex.App.–Tyler Jan. 24, 2007, no pet.) (not designated for publication); [13th] *In re R.M.R.*, 218 S.W.3d 863, 864 (Tex.App.–Corpus Christi 2007, no pet. h.); [14th] *In re C.M.*, 208 S.W.3d 89, 92 (Tex.App.–Houston [14th Dist.] 2006, no pet.)*.

effective assistance of counsel was violated by counsels' failure to file a statement of points.

**Constitutional Challenge**

Relying on the recent decision in *In re B.S.*, No. 09-06-0293-CV, 2007 WL 1441273 (Tex.App.–Beaumont May 22, 2007, no pet.) (not designated for publication), the Department contends that Trena and Timothy's constitutional challenge is precluded because they failed to raise that challenge in a timely filed statement of points. *In re B.S.* is clearly distinguishable from this case. In *In re B.S.*, the appellant's ineffective assistance of counsel claims did not pertain to the failure to timely file a statement of points. Two ineffective assistance claims, which were included in a timely filed statement of points, were overruled because the appellant failed to establish ineffective assistance, and two ineffective assistance claims, which were not included in a timely filed statement of points, were also overruled based upon § 263.405(i). None of the appellant's constitutionality claims in *In re B.S.* rested upon a claim of ineffective assistance of counsel for failure to timely file a statement of points. In this case, we are squarely faced with that challenge.

The Department also contends that Trena and Timothy's constitutional claims were waived because they were not procedurally preserved by the filing of a motion for new trial.

11

Relying upon *In re B.L.D.*, 113 S.W.3d 340 (Tex. 2003), the Department argues that the fundamental-error doctrine does not apply to procedural preservation rules, nor does due process require appellate review of unpreserved complaints in parental termination cases.

However, Trena and Timothy contend that § 263.405(i) is unconstitutional, as applied to them, because they were denied their due process right to effective assistance of counsel. The Department also contends that Trena and Timothy's constitutional challenge is precluded because they failed to raise that challenge in a timely filed motion for new trial. While we note an "as applied" constitutional challenge is waived if not raised at the trial court level, *see In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003); *In re S.K.A.*, 236 S.W.3d 875, 887 (Tex.App.–Texarkana 2007, pet. filed Dec. 20, 2007), the very nature of Trena and Timothy's complaint is that they are being unconstitutionally deprived of their right to present the merits of their appeal by being denied effective assistance of counsel. It matters not whether counsel failed to preserve their right of appeal by failing to file a statement of points or a motion for new trial, the constitutional principals are the same.

We further acknowledge that as an established rule of judicial practice, appellate courts should not decide constitutional questions when an issue can be resolved on non-constitutional grounds. *See, e.g., In re B.L.D.*, 113 S.W.3d at 349. Therefore, if their

counsel was not ineffective we would not need to address their constitutional claims. Accordingly, we will proceed to discuss Trena and Timothy's claims of ineffective assistance of counsel before we address the merits of their constitutional due process claims.

## Ineffective Assistance of Counsel

Trena and Timothy allege that their counsel failed to provide competent assistance after the termination proceedings in violation of their rights to due process of law. Specifically, they complain that their respective trial counsel were ineffective because they failed to preserve a review of their complaints on appeal by neglecting to ensure that a statement of points, as required by § 263.405(b), was timely filed.

In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, indigent parents who respond in opposition to the termination are entitled to the appointment of counsel to represent their interests. *See* § 107.013(a)(1). This statutory right to the appointment of counsel necessarily embodies the right to effective assistance of counsel at every critical stage of the proceeding. *In re M.S.,* 115 S.W.3d 534, 544 (Tex. 2003). A "critical stage" in a termination proceeding is any stage

where substantial rights of the parties may be affected. *Cf. Mempa v. Rhay,* 389 U.S.128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967).

Because Texas provides the right of an appeal from a judgment terminating parental rights, part of the process of ensuring the accuracy of judgments necessarily includes the right to effective appellate review. *In re M.S.,* 115 S.W.3d at 546. Though avenues of appeal are not required to be established, it is now fundamental that once established, these avenues of review must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *M.L.B. v. S.L.J.,* 519 U.S. 102, 111, 117 S.Ct. 555, 136 L.Ed. 473 (1996); *In re M.S.,* 115 S.W.3d at 547. Not only must a parent be allowed to appeal the termination of his or her parental rights, but that appeal must be meaningful. *In re S.K.A.,* 236 S.W.3d at 890.

Because a statement of points is a procedural prerequisite for appellate review, the deadline date for filing a statement of points is a critical stage of the proceeding. Accordingly, we hold that Trena and Timothy were entitled to effective assistance of counsel through the deadline date for filing a statement of points in compliance with the requirements of § 263.405(b).

In a suit in which termination of the parent-child relationship is sought, the appropriate standard of review for effective assistance of counsel is the same standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See In re M.S.*, 115 S.W.3d at 545. The *Strickland* standard is well-established, fairly straightforward, and places a sufficiently high burden on the movant to establish: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the complaining party. *Strickland*, 466 U.S. at 687; *In re M.S.*, 115 S.W.3d at 545.

When a party is represented by counsel during trial and the record does not reflect trial counsel withdrew or was replaced by new counsel after judgment has been entered, there is a rebuttable presumption that the trial counsel continues to represent that party through the time limit for filing a motion for new trial. *Cf. Smith v. State*, 17 S.W.3d 660, 662-63 (Tex.Crim.App. 2000); *Oldham v. State*, 977 S.W.2d 354, 363 (Tex.Crim.App. 1998). In the case at bar, counsel for both Trena and Timothy indicated that they understood that they had a continuing obligation when they prepared the individual notices of appeal and when they filed their own motion to withdraw. Therefore, we conclude that trial counsel's duty to represent the interests of an indigent parent in a termination proceeding does not end with trial but, instead, continues until the judgment becomes final

or until counsel is expressly discharged by the trial court.  Because Trena and Timothy's respective trial counsel had not been discharged or replaced on or before the deadline date for the filing of a statement of points, we find they had a duty to file a timely statement of points in accordance with the requirements of § 263.405(b).

With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case and must primarily focus on whether counsel performed in a "reasonably effective" manner; that is, whether the errors made by counsel were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *In re M.S.*, 115 S.W.3d at 545, (quoting *Strickland*, 466 U.S. at 687).  Counsel's performance falls below acceptable levels of performance when the representation is so grossly deficient as to render the proceedings "fundamentally unfair."  *Brewer v. State*, 649 S.W.2d 628, 630 (Tex.Crim.App. 1983); *In re M.S.*, 115 S.W.3d at 545.  In making this determination, we must give great deference to counsel's performance, and we should find ineffective assistance of counsel only in those situations where the challenged conduct was "so outrageous that no competent attorney would have engaged in it."  *In re M.S.*, 115 S.W.3d at 545 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)).

The filing of a statement of points is a straightforward procedure. That a statement of points is required for appellate review of a final order rendered under subchapter E of chapter 263 of the Texas Family Code is something that any competent trial counsel practicing in this area of the law should know. Under the facts of this case, we find that Trena and Timothy's trial counsels' failure to ensure that statements of points were timely filed amounted to ineffective assistance, satisfying the first prong of the *Strickland* standard. However, our inquiry does not end there.

Having determined that Trena and Timothy's counsels' failure to file statements of points was deficient, we must now address the second *Strickland* prong and determine whether the deficient performance prejudiced the complaining party. In this case, Trena and Timothy both contend they have been prejudiced by their respective counsel's failure to file a statement of points because by failing to do so they have been deprived of the right to show harm pertaining to the merits of their appeal. In essence, Trena and Timothy complain that because they have been deprived of their right to present a meritorious point of appeal, they have been harmed. To the extent that their issue is meritorious, we find that there is a reasonable probability that but for counsel's unprofessional error, the result of the proceeding would be different. Accordingly, we find that Trena and Timothy's

respective trial counsel provided ineffective assistance of counsel by failing to file a timely statement of points.

## Due Process Claims

Recognizing that their legal and factual sufficiency claims are procedurally barred by this failure to file a statement of points, Trena and Timothy contend that § 263.405(b) and (i) violate their federal and State due process rights. Specifically, in their first and second points, Trena and Timothy contend their due process rights, as guaranteed by the United States and Texas Constitutions, have been violated because their trial counsel failed to timely file a statement of points, thereby depriving them of their due process rights to effective assistance of counsel.

Because Trena and Timothy's due process claims cannot be disposed of by non-constitutional means, we will proceed to consider their legal and factual sufficiency claims in conjunction with their contention that their federal and State due process rights to effective assistance of counsel was violated by counsels' failure to file timely statements of points.

18

The Texas Supreme Court has held that in cases where counsel was ineffective in preservation of jury charge error, due process considerations did not require our procedural rules to be set aside. *See In re B.L.D.*, 113 S.W.3d at 351-54; *In re J.F.C.*, 96 S.W.3d 256, 272-74 (Tex. 2002). The Court further suggested, however, that the failure to preserve a factual sufficiency question might very well rise to the level of a due process violation depending on a "different calibration of the [*Mathews v.*] *Eldridge*[9] factors." *In re B.L.D.*, 113 S.W.3d at 354; *In re M.S.*, 115 S.W.3d at 547-48. In conducting an *Eldridge* due process analysis, we must weigh these factors and then balance the net result against the presumption that our procedural rules comport with constitutional due process requirements. *In re B.L.D.*, 113 S.W.3d at 354; *In re M.S.*, 115 S.W.3d at 547.

*Eldridge Factors*

Parental termination proceedings implicate fundamental liberties and such proceedings must comply with the requirements of procedural due process. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The proper test for analyzing the constitutionality of a procedure in the parental termination context is the three-part balancing test established by *Eldridge,* 424 U.S. at 335. Determining what

---

[9]*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

19

process is due in a particular proceeding requires consideration of three factors: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of that interest due to the procedures used. *Id.*

Concerning the first *Eldridge* factor, the private interests at stake, the Supreme Court has acknowledged that the right of a parent to maintain custody of and raise his or her child "is an interest far more precious than any property right." *Santosky*, 455 U.S. at 758-59. A parent's interest in the accuracy and justice of a termination decision is a "commanding one." *Lassiter v. Department of Social Services of Durham County, N.C.*, 452 U.S.18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Both the parent and the child have a substantial interest in that decision. Therefore, the parent's fundamental liberty interest in maintaining custody and control of his or her child, the risk of permanent loss of the parent-child relationship, and both the parents' and the child's interest in a just and accurate decision "weigh heavily in favor of permitting a factually sufficiency review" of the evidence where counsel has unjustifiably failed to preserve that error. *In re M.S.*, 115 S.W.3d at 548. On the whole, the parent's and the child's interests in ensuring that the decision to permanently extinguish the family bond is an accurate and just decision weighs heavily in favor of permitting appellate review of that decision, despite the statutory bar,

20

when assistance of counsel in meeting the procedural prerequisites has been effectively denied. *In re S.K.A.,* 236 S.W.3d at 893.

The governmental interest in parental rights termination cases is to protect the best interest of the child. *In re B.L.D.*, 113 S.W.3d at 353. Indeed, the entire statutory scheme of the Texas Family Code for protecting children's welfare focuses on the child's best interest. *See* §§ 153.002, 161.001(2), 263.306(4) and (5). This interest is closely aligned with the State's interest to see that termination cases are not unduly prolonged. *In re M.S.,* 115 S.W.3d at 548. This policy is reflected in the statutory provision requiring that all appeals from termination proceedings be given precedence over other civil cases and shall be accelerated by the appellate courts. § 109.002(a). Factual sufficiency determinations implicate greater appellate delays; however, the State's interests in economy and efficiency pale in comparison to the private interests at stake, and to the risk that a parent may be erroneously deprived of his or her parental rights and the child may be deprived of the parent's companionship. *Id.* The State's paramount interest in meeting the best interest of the child is best served by a procedure that promotes an accurate determination of whether the natural parents can ensure the safety and stability of the child. *Id.* at 549. Thus, the second *Eldridge* factor also weighs in favor of permitting a sufficiency review when counsel unjustifiably fails to follow procedural requirements. *Id.*

21

Perhaps the most critical *Eldridge* factor is the third factor, the risk of an erroneous deprivation of parental rights. The "pivotal" fact in the analysis is that termination of parental rights is "traumatic, permanent, and irrevocable." *Id.* Termination divests for all time that natural right as well as all other legal rights, privileges, duties, and powers existing between a parent and a child. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). For this reason, any significant risk of error is unacceptable. *In re M.S.*, 115 S.W.3d at 549. In the subjective world of a child's best interest, absolute certainty can never be guaranteed; however, the risk of an erroneous deprivation of parental rights based upon evidence that, though minimally existing, fails to clearly and convincingly establish grounds for termination should not be tolerated. Thus, if counsel unjustifiably fails to file a statement of points raising a meritorious sufficiency of the evidence point, then such incompetency raises the risk of erroneous deprivation too high, and our procedural rule governing preservation must give way to constitutional due process considerations. When we balance the presumption that our procedural rules comport with constitutional due process requirements against the *Eldridge* factors, we conclude that those factors weigh in favor of review most in those situations where a review of the sufficiency of the evidence raises the greatest concern for the potential of an erroneous deprivation of parental rights. In other words, where ineffective assistance of counsel has prevented a review of the sufficiency of the evidence,

22

and a review of the sufficiency of the evidence reveals that there is a high probability that a parent's rights have been erroneously terminated, then due process considerations (i.e., the *Eldridge* factors) weigh in favor of a sufficiency analysis, notwithstanding a procedural impediment. We acknowledge that this reasoning will require an appellate court to review both legal and factual sufficiency issues to determine if it should even consider those issues. Any lack of logic in this process can be attributed to the lack of logic in the statute itself.

We do not hold that every failure to preserve error through the failure to file a statement of points rises to the level of a due process violation. Our ruling is specifically limited to that situation where trial counsel has failed to timely file a statement of points raising a meritorious issue concerning legal or factual sufficiency of the evidence. Accordingly, in the context of a valid issue on appeal concerning the due process considerations of effective assistance of counsel in preserving a legal or factual sufficiency claim through the filing of a statement of points, we will proceed to review Trena and Timothy's legal and factual sufficiency points to determine if the *Eldridge* factors weigh in favor of a consideration of those points notwithstanding the absence of a timely filed statement of points.

We are mindful of the gut-wrenching environment within which parental termination cases are decided, and we are sensitive to the subjectivity and lack of certainty that can be obtained in even the best litigated parental-termination cases; however, in cases such as the case at bar, where the Department seeks termination of both parents' rights to multiple children based primarily upon acts of one parent directed towards less than the whole number of children, we cannot be swept away with an emotional determination of the best interests of the children at the expense of factually sufficient grounds for termination as to each parent, as to each child.  In other words, although contextually connected, the grounds for termination must independently exist as to each parent, as to each child.  Therefore, in our review of Trena and Timothy's legal and factual sufficiency points, we choose to address Trena's points separately from Timothy's, and we choose to address each child independently.

**Standard of Review in Termination Cases**

In proceedings to terminate the parent-child relationship, the petitioner must establish one or more acts or omissions enumerated by statute and must additionally prove that termination of the parent-child relationship is in the best interest of the child.  § 161.001.  Both elements must be established and proof of one element does not relieve

the petitioner of the burden of proving the other. *See Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Because termination of parental rights is of such weight and gravity, due process requires the petitioner to justify termination by clear and convincing evidence. § 161.001; *In Interest of G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.,* 89 S.W.3d 17, 25-26 (Tex. 2002).

In a legal sufficiency review of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. § 101.007 (Vernon 2002), *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*.

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d at 25-26. Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* When, as in this case, findings of fact and conclusions of law were not filed, we must presume that every disputed fact issue was found by the trial court in support of the judgment rendered. *Fields v. Texas Emp. Ins. Ass'n*, 565 S.W.2d 327, 329 (Tex.Civ.App.–Amarillo 1978, writ ref'd n.r.e.). Finally, we observe that only one statutory ground is required to terminate parental rights under § 161.001. *See In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.). Therefore, we will affirm the termination order if there is both legally and factually sufficient evidence on any statutory ground upon which the trial court relied in terminating. *Id.*

<u>Trena's Claims as to J.O.A. & T.J.A.M.</u>

Where termination of parental rights is not involved, the balancing of the *Eldridge* factors does not warrant a due process review of Trena's ineffective assistance of counsel claims. Because the order being appealed does not terminate Trena's parental rights as to J.O.A. or T.J.A.M., we find that a review of the court's order, as it pertains to either J.O.A. or T.J.A.M., was not preserved for appeal because Trena failed to file a timely statement of points as required by § 263.405(b). Consequently, point of error three is overruled as to Trena.

<u>Trena's Claims as to T.J. M. & C.T.M.</u>

As to the twins, T.J.M. and C.T.M., the record reflects that Trena went on a five hour cocaine and alcohol binge on July 25, 2005, just hours before they were born. The record further reflects that Trena had a long history of drug and alcohol abuse. Because T.J.M. and C.T.M. both tested positive for controlled substances at the time of their birth, we find that the risk of an erroneous deprivation of Trena's parental rights is slight from a sufficiency of the evidence perspective. Therefore, upon balancing the *Eldridge* factors, we further find that Trena's ineffective assistance of counsel claims do not raise a constitutional due process claim. Accordingly, we find that a review of the court's order,

27

as it pertains to T.J.M. and C.T.M., was not preserved for appeal because Trena failed to file a timely statement of points as required by § 263.405(b). Points of error one, two, six, seven, nine, and ten are overruled as to Trena.

### Timothy's Claims as to T.J.A.M.

Where termination of parental rights is not involved, the balancing of the *Eldridge* factors does not warrant a due process review of Timothy's ineffective assistance of counsel claims. Because the order being appealed does not terminate Timothy's parental rights as to T.J.A.M., we find that a review of the court's order, as it pertains to T.J.A.M., was not preserved for appeal because Timothy failed to file a timely statement of points as required by § 263.405(b). Consequently, point of error three is overruled as to Timothy.

### Timothy's Claims as to T.J. M. & C.T.M.

The Department alleged, and the court found, that termination of Timothy's parental rights as to T.J.M. and C.T.M. was appropriate under two separate grounds: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;[10] and (2) engaged in conduct

---

[10] § 161.001(1)(D).

28

or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children.[11]

T.J.M. and C.T.M. were removed from Timothy at birth. At all times relevant to their lives, T.J.M. and C.T.M. were in "conditions or surroundings" dictated by the Department, not Timothy. Therefore, there is no evidence that Timothy knowingly placed or knowingly allowed T.J.M. or C.T.M. to remain in conditions or surroundings which endangered the physical or emotional well-being of the children.

To "endanger" the physical or emotional well-being of a child means "more than a threat of metaphysical injury or the possible effects of a less-than-ideal family environment." *Tex. Dep't. of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987) (citations omitted). However, it is not necessary that the conduct be directed at the child or that the child actually suffer injury, so long as the conduct exposes the child to loss or injury. *Id.* Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct. *In re A.J.H.,* 205 S.W.3d 79, 81 (Tex.App.–Fort Worth 2006, no pet.).

While there was evidence calling into question Timothy's parenting skills, Timothy's parenting abilities significantly improved following the Department's involvement in the lives of his children. Evidence supported Timothy's efforts to clean up his life. Timothy

---

[11] § 161.001(1)(E).

demonstrated a willingness to continue counseling and he established a support system through his church and his family. He secured suitable housing and employment. He exercised regular visitation, attended parenting classes, and demonstrated a pattern of being drug-free. While Timothy was hardly the ideal father, based upon this record, we cannot say that a reasonable and rational factfinder could have formed a firm belief or conviction that Timothy engaged in conduct which exposed T.J.M. or C.T.M. to loss or injury and jeopardized the children's emotional and physical well-being because there is insufficient evidence of Timothy's continued drug use, subsequent incarceration, or other anti-social behavior. Therefore, we find that the evidence is legally and factually insufficient to support the predicate finding of conduct endangering the children. Having found insufficient evidence of conduct endangering the children, we need not address the second predicate, the best interest of the children. Accordingly, we find that the termination of Timothy's parental rights as to T.J.M. and C.T.M. is not supported by the evidence.

Having found that the risk of an erroneous deprivation of Timothy's parental rights as to T.J.M. and C.T.M. is high from a sufficiency of the evidence perspective, upon balancing the *Eldridge* factors, we further find that Timothy's ineffective assistance of counsel claims do raise a constitutional due process claim. To the extent that § 263.405(i) prevents this Court from considering those claims, we find it to be unconstitutional as applied to the facts of this case. *In re S.K.A.,* 236 S.W.3d at 894. Points of error one, two,

four, five, eight, nine, and ten regarding termination of Timothy's parental rights to T.J.M. and C.T.M are sustained.

## Conclusion

Accordingly, we affirm that portion of the trial court's order terminating the parental rights, if any, of any alleged or unknown father as to J.O.A.; affirm that portion of the order appointing the maternal grandmother as J.O.A.'s managing conservator; affirm that portion of the order appointing the maternal grandmother as T.J.A.M.'s managing conservator; affirm that portion of the order terminating the parental rights of Trena to the twins, T.J.M. and C.T.M.; and reverse that portion of the trial court's order terminating the parental rights of Timothy to the twins, T.J.M. and C.T.M., and remand this cause to the trial court for further proceedings consistent with this opinion. In reaching this decision, the Court makes no judgment whatsoever as to whether it is in the best interest of T.J.M. and C.T.M. to be physically placed with Timothy. The decision to allow T.J.M. and C.T.M. to live with Timothy can, and should, only be made by the trial court based upon the best interest of T.J.M. and C.T.M. after a review of the facts and circumstances as they exist at the time of that review.

Patrick A. Pirtle
Justice

31