

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-14-00365-CV

___

IN THE INTEREST OF L.G. AND S.G., CHILDREN

___

On Appeal from the 84th District Court
Hansford County, Texas
Trial Court No. CVO5210, Honorable William D. Smith, Presiding

___

March 26, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

X.M.G. and J.G., mother and father, respectively, of L.G. and S.G. (twin girls), appeal from a judgment terminating their parental rights to those children. The suit was initiated by the Texas Department of Family and Protective Services (the Department). X.M.G. contends that the evidence was legally and factually insufficient to support the jury findings that several statutory grounds for termination existed and termination was in the best interests of the children. J.G. does not contest the sufficiency of the evidence. Instead, he simply argues that he was denied the effective assistance of counsel. We affirm.

The evidence of record illustrated that 1) both parents used drugs (cocaine, marijuana, and/or methamphetamine), 2) drugs were discovered in the house, 3) both X.M.G. and J.G. engaged in domestic violence, 4) X.M.G. engaged in violence upon third parties (via the use of a bat on one occasion), 5) the two six-year-old children served as X.M.G's caretaker (as opposed to vice versa), 6) the two children were diagnosed as suffering from "adjustment disorder" and "appeared to come from a neglectful and chaotic environment," 7) the two children "displayed emotional and behavioral problems" relating to their environment, 8) the two children were continually worried about the safety of their mother, 9) the two children "did not know how to follow rules or listen to discipline or teaching because they were used to taking care of themselves and following their own rules," 10) the two children slept poorly, had nightmares, were anxious and worried about domestic issues between their parents, 11) X.M.G lacked "the ability to provide adequate care for her children based on the significant instability and lack of continuity" present in the household, 12) X.M.G held approximately twelve different jobs during the year before trial, 13) X.M.G. and J.G. were unable to place the needs of their children "above their own," 14) children exposed to domestic violence, such as the two here, "struggle with sleep disturbance, emotional disturbance, social disturbance [and] educational disturbance," 15) the two children were removed from the household and placed with foster parents, 16) the two children would not be in a safe and stable environment if returned to X.M.G and J.G., 17) J.G. missed numerous counselling sessions ordered by the court purportedly because of his work schedule, 18) the counseling sessions in which X.M.G. and J.G. engaged resulted in "minimal progress," 19) the police investigated numerous reports of domestic violence

at the home of X.M.G. and J.G. wherein J.G. purportedly assaulted X.M.G. and the latter would not cooperate in the investigations, 20) X.M.G. and J.G. occasionally failed their drug tests after being ordered to submit to and pass same, 21) J.G. failed to pay child and medical support as ordered by the court, 22) J.G. had an alcohol dependency and failed to stop drinking and attend Alcoholics Anonymous meetings as ordered by the court, 23) J.G. periodically failed to appear at scheduled times to undergo drug testing, 24) J.G. threatened to take the children to Mexico so they could live with his parents, 25) X.M.G. was undergoing criminal prosecution for drug possession and theft, 26) J.G. had been arrested for engaging in domestic violence, 27) J.G. failed to attend batterer's intervention counseling, 28) X.M.G. allowed J.G. to be in the presence of the two children even though she was ordered to prohibit that, 29) X.M.G. and J.G. lacked a support system, 30) the two children are adapting, happy, and doing well in their new environment, 31) the children no longer ask about X.M.G. or J.G., 32) the foster parents want to adopt the children, 33) neither of the children care to return to their biological parents, and 34) the male foster parent (a legal resident as opposed to a United States citizen) knows of and was threatened by J.G.

A trial was had before a jury. Ten members of that jury found that the parental rights of X.M.G. and J.G. should be terminated. That resulted in the trial court entering judgment terminating their rights because termination was in the best interests of the children and J.G. and X.M.G. 1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings endangering the physical or emotional well-being of the children, pursuant to § 161.001(1)(D) of the Texas Family Code, 2) engaged in conduct or knowingly placed the children with persons who engaged in conduct

3

endangering the physical or emotional well-being of the children pursuant to § 161.001(1)(E) of the Texas Family Code, and 3) failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parents for abuse or neglect per § 161.001(I)(O) of the same code.

### X.M.G.'s Appeal

As previously mentioned, X.M.G. contends (through several issues) that both legally and factually insufficient evidence supports termination. We overrule the issues.

Because the case was submitted to the jury in broad form, we need to only find the evidence sufficient to support a single statutory ground for termination and that the best interests of the children are served through termination. *In the Interest of J.H.M.*, No. 07-07-0109-CV, 2009 Tex. App. LEXIS 9886, at *21-22 (Tex. App.—Amarillo December 29, 2009, no pet.) (mem. op.). Whether such evidence exists is determined through application of the standard of review we described in *In re C.C.*, No. 07-12-00500-CV, 2013 Tex. App. LEXIS 5704 (Tex. App.—Amarillo May 8, 2013, no pet.); *see also In the Interest of D.N.*, 405 S.W.3d 863, 872 (Tex. App.—Amarillo 2013, no pet.) (discussing the pertinent standard of review). In *In re C.C.*, we wrote that due process required the application of the clear and convincing standard of proof. *In re C.C.,* 2013 Tex. App. LEXIS 5704, at *7. Evidence is of such ilk if it will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* In applying that standard, we must defer to the fact finder; that is, we

4

must defer to the jury's role as fact finder by assuming it resolved evidentiary conflicts in favor of its finding when reasonable to do so and by disregarding evidence that it reasonably could have disbelieved. *Id.* at *7-8. So too must we look at all the evidence in the light most favorable to the finding when conducting the legal sufficiency analysis. *Id.* at *8.

When reviewing the factual sufficiency of the evidence, however, we consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* at *8-9. Stated differently, "'[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *Id.*, *quoting*, *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). With this said, we turn to the record before us.

Next, § 161.001(1)(O) of the Texas Family Code allows the trial court to terminate the parent-child relationship if it finds by clear and convincing evidence that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE ANN. §161.001(1)(O) (West 2014). X.M.G. concedes that the two children had been removed for not less than nine months for abuse or neglect and that they had been in the permanent or temporary managing conservatorship of the Department. She

5

denies, however, that the Department proved she violated a provision of a court order establishing the actions necessary to secure the return of the children. We disagree.

The service plan ordered by the court directed X.M.G. to not only take drug tests but it also mandated that she "will test 'negative' during these random drug screens." The evidence illustrates that not all of her tests were negative. So too was she ordered to "enroll and complete an intensive inpatient substance abuse program"; that she did not do. The court also ordered her to have housing that was appropriate and safe for her children. That housing needed to be free of anything harmful to her children. Yet, the evidence disclosed that X.M.G. continued to use and maintain drugs in the abode. Other evidence revealed that X.M.G. also allowed J.G. to be in the house even though the safety plan ordered by the court prohibited it.

Generally, Texas courts take a strict approach when applying § 161.001(1)(O) of the Family Code. *In the Interest of D.N.*, 405 S.W.3d at 877. The focus lies upon a parent's failure to comply with a court order; the reasons for non-compliance or the degree of compliance generally are irrelevant. *Id.* The statute does not make a provision for excuses. *Id.*; *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied). Given the evidence we described above, the fact finder could have formed a firm conviction and belief that X.M.G. failed to comply with the provisions of a court order specifying the actions necessary for her to obtain the return of her children. So too could the jury have resolved the disputed evidence in favor of its finding.

Simply put, the record contains both legally and factually sufficient evidence to support at least one statutory ground warranting termination of the parental relationship.

6

Consequently, we need not address whether the other statutory grounds have such support.

As for evidence establishing that termination was in the best interests of the children, we peruse the record with an eye upon what are known as the *Holley* factors. *See Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976). Those factors include, among other things, 1) the desires of the children, 2) the emotional and physical needs of the children now and in the future, 3) the emotional and physical danger to the children now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist those individuals to promote the best interests of the children, 6) the plans for the children by those individuals or by the agency seeking custody, 7) the stability of the home, 8) the acts or omissions of the parent indicating that the existing parent-child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *In the Interest of L.L.,* No. 07-14-00395-CV, 2015 Tex. App. LEXIS 1080, at *5-6 (Tex. App.—Amarillo February 4, 2015, no pet. h.) (mem. op.); *In re P.E.W.*, 105 S.W.3d 771, 779-80 (Tex. App.—Amarillo 2003, no pet.). It is not necessary that each factor favors termination, and the list is not exclusive. *In re P.E.W.*, 105 S.W.3d, 779-80. Furthermore, the same evidence supporting the presence of a statutory ground for termination is often relevant when assessing the child's best interest. *. In the Interest of L.L* 2015 Tex. App. LEXIS 1080, at *5-6.

Here, the evidence of record illustrates that a bond exists between X.M.G. and the children, and that she attempted to care for them and abide by the court's safety plan. Yet, the thirty-four instances of evidence we itemized above coupled with her failure to comply with the court-ordered safety plan allowed the fact finder to form a firm

7

conviction and belief that the best interests of the children warranted termination of the parental relationship. So too a reasonable fact finder could have resolved the disputed evidence in favor of its finding.

The children are happy at their present placement and wish to remain there. Their emotional and physical needs are now being met. Their anxiety, inability to sleep, and nightmares have diminished. Their foster parents provide a safe and permanent environment for the children and wish to adopt the children. They are no longer in an environment of domestic violence and drug abuse. Rather, their environment is stable. We cannot agree with X.M.G.'s proposition that the jury acted unreasonably when concluding that termination furthered the children's best interests.

In sum, the evidence supporting the decision to terminate the parental relationship is legally and factually sufficient. The trial court did not err in doing so, and we overrule the issues asserting otherwise.

### J.G.'s Appeal

As previously mentioned, J.G. does not question the sufficiency of the evidence illustrating that termination was warranted under any of the statutory grounds or that the best interests of the children did not warrant termination. Instead, he complains about the effectiveness of his legal counsel. The latter allegedly was ineffective because he failed to object to 1) questioning by the Department regarding violence observed by the children, 2) the admission of notes from the children's counselor purportedly containing hearsay statements from the children, and 3) the same counselor reiterating hearsay statements made by the children. The purported hearsay statements involved the children witnessing J.G. assault X.M.G. We overrule the issue.

8

That an indigent parent subject to a termination proceeding instituted by the State is entitled to effective, appointed legal counsel is well-established. *In the Interest of M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003) (so holding); *accord, In re J.O.A.*, 262 S.W.3d 7, 18 (Tex. App.—Amarillo 2008), *aff'd as modified and remanded*, 283 S.W.3d 336 (Tex. 2009). The standard used to determine whether a parent was afforded a counsel is that set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Id.* It requires the complaining party to prove not only that counsel's performance was deficient but also that the deficiency prejudiced him. *In re M.S.*, 115 S.W.3d at 545; *In re J.O.A.*, 262 S.W.3d at 18.

With respect to the first element, we take into account all of the circumstances surrounding the proceeding and primarily focus on whether counsel performed in a reasonably effective manner. *In re M.S*, 115 S.W.3d at 545. Moreover, that performance must be so grossly deficient as to render the proceeding fundamentally unfair. *Id.*; *accord, In the Interest of B.G.*, 317 S.W.3d 250, 256 (Tex. 2010) (explaining that a claim of ineffective assistance requires more than merely showing that appointed counsel was ineffective. The complainant must show a deficient performance by counsel so serious as to deny the defendant a fair and reliable trial). In other words, the conduct must be so outrageous that no competent attorney would have engaged in it. *In re M.S.,* 115 S.W.3d at 545. Most importantly, though, we indulge in a strong presumption that counsel's actions fell within the wide range of reasonable professional assistance and presume, until rebutted, that they were strategic. *Id.*

As for the element of prejudice, the complaining party has the duty to illustrate that but for the attorney's supposedly unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 550; *In the Interest of K.D.L.,* No. 09-14-00348-CV, 2014 Tex. App. LEXIS 12127, at \*3 (Tex. App.—Beaumont November 6, 2014, no pet.) (mem. op.). Satisfying this prong requires more than simple conclusions. *Ipse dixit* is not enough. Rather, the issue requires the presentation of analysis on the part of the complainant.

Having discussed the pertinent standard, we turn to the complaints at bar and immediately note the rather limited nature of J.G.'s attack upon the performance of his trial attorney. No effort was made to assess trial counsel's overall performance. The trial was rather extensive and involved the presentation and examination of numerous witnesses and exhibits, as depicted by the seven volumes of the reporter's record. However, nothing is said about the quality of counsel's performance during jury selection, jury argument, cross-examination of all the government's witnesses, or the like. Instead, J.G. complains about his attorney's failure to exclude evidence pertaining to whether the children personally saw J.G. assault X.M.G. This curtailed focus hampers the viability of his ineffective assistance claim since "all of the circumstances surrounding the case" must be taken into account. *In re M.S.*, 115 S.W.3d at 545. One is not entitled to perfect counsel, only reasonably effective counsel. And, being reasonably effective encompasses overall performance. Rare are the instances when one or two mistakes equate to outrageous conduct denying one a fair trial.

J.G. believes his attorney should have objected when 1) X.M.G. was asked "If the little girls said, 'Daddy hit Mommy and made her nose bleed,' would they be lying or

telling the truth?"; [1] 2) a counselor testified that the children told her they saw their father assault their mother; and 3) notes of the counselor memorializing those statements were proffered into evidence. The question to X.M.G. allegedly interjected evidence not of record while the other instances allegedly interjected hearsay into the record. Yet, it was not the fact of hearsay or assumed facts being interjected that seems to bother J.G. Rather, his concern involves the impact of the particular hearsay and assumed facts upon the jury. This is revealed in his quip about "[s]omething that might be unwholesome when done in front of children is much less egregious when engaged in where no children can see or hear the matter" and that is "why ratings exist so that children may not watch certain movies that might be harmful to them." To this we make several observations.

First, the argument fails to explain how excluding the evidence would create a reasonable probability that the outcome of the proceeding would have differed. Indeed, J.G. does not dispute that the State presented sufficient evidence to prove three statutory grounds for termination or that termination was in the best interests of his children. And, at least one of the statutory grounds had little to do with the children seeing domestic violence; § 161.001(1)(O) focused on J.G.'s non-compliance with a court order as opposed to his assaulting X.M.G. So, we are merely left to wonder why exclusion of the evidence in question (had counsel objected) would have made the jury less likely to find that J.G. failed to comply with that court order.

Second, our review of the record discloses that even if the evidence was excluded, the jury remained able to reasonably infer that the children experienced the

---

[1] Interestingly, X.M.G. did not answer the question by saying whether her children would be truthful or not. Instead, she said she did not know because the children were placed in a different room when X.M.G. and J.G. fought.

assaults.  X.M.G. admitted to the occurrence of "ongoing domestic violence" while other witnesses testified to seeing her bruised and scratched.  Thus, she carried the evidence of J.G.'s attacks on her body, and there is no evidence that the children were blind or otherwise unable to see them.  Nor is there evidence that the children could not hear what was occurring even if placed in another room.  To that we add a counselor's testimony describing how the six-year-old siblings not only worried about and focused upon the safety of their mother but also became her caretaker.  Considered together, such evidence permitted a fact finder to reasonably infer that the children knew J.G. periodically beat X.M.G.  In other words, the jury could have justifiably inferred that the children witnessed the "unwholesome conduct" of J.G. even if trial counsel had objected in the manner J.G. now suggests.   So, we again are left to wonder how J.G. was prejudiced in the manner contemplated by *In re M.S.*

Finally, we add to the mix the absence of any record memorializing why trial counsel did not object.  That circumstance prevents us from concluding that the presumption of competent performance was rebutted or that the silence was not founded upon some reasonable strategy.  *See In the Interest of K.L.L.H.*, No. 06-09-00067-CV, 2010 Tex. App. LEXIS 154, at *17-18 (Tex. App—Texarkana January 12, 2010, pet. denied) (mem. op.) (stating that "[w]here . . . the record is silent as to the reason that counsel failed to lodge certain objections or take certain actions, we assume it was due to any strategic motivation that can be imagined").  And, one strategic basis would be to forego objecting to some purportedly inadmissible evidence of domestic violence when other admitted evidence appears of record proving the same thing.  Counsel need not object to everything to be effective, especially when the objection

12

may exclude little more than redundant evidence. In sum, J.G. failed to prove counsel's conduct denied him a fair trial.

Having overruled all issues before us, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice